BANK OF NEZ PERCE et al. v. PINDEL et ux.

In re PINDEL.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1912.)

No. 1,999.

**1. BANKRUPTCY (§§ 395, 400\*)—EXEMPTIONS—POWER OF COURT.**

Exempt property does not become part of an estate in bankruptcy, nor pass to the trustee, whether the property be separable and segregated from other property or not; but, where process is necessary to segregate the exempt and nonexempt parts of property, the bankruptcy court has jurisdiction under Bankruptcy Act July 1, 1898, c. 541, § 2, cl. 11.

----

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

30 Stat. 546 (U. S. Comp. St. 1901, p. 3421), to regulate the time and manner in which the exemption shall be set apart.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 656–658, 671–675; Dec. Dig. §§ 395, 400.*]

2. BANKRUPTCY (§ 400*)—EXEMPTIONS—HOMESTEAD—DETERMINATION.

Under Rev. Codes Idaho, §§ 3181–3192, 3196, 3198, 3199, 3201, providing for the selection of homesteads not exceeding $5,000 in value, where bankruptcy proceedings were begun before sale of land, including a homestead under execution, the bankruptcy court acquired jurisdiction to determine the time and manner of setting aside the homestead.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 671–675; Dec. Dig. § 400.*]

3. BANKRUPTCY (§ 400*)—EXEMPTIONS—HOMESTEAD SALE.

Under Rev. Codes Idaho, §§ 3181–3192, 3196, 3198, 3199, 3201, providing for the selection of homesteads not exceeding $5,000 in value, where a bankrupt's homestead appears to have been worth $9,000, it was proper to require the property to be sold if the exemptioner was unable or declined to pay the $4,000 surplus into the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 671–675; Dec. Dig. § 400.*]

4. BANKRUPTCY (§ 396*)—EXEMPTIONS—STOCK.

In bankruptcy two hogs and their pigs were properly set aside as exempt, under Rev. Codes Idaho, § 4480, to the bankrupt's wife as a resident of the state, though the exemption was erroneously claimed under section 4479, which exempts certain property to a married woman from execution against her husband.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 659–668, 670; Dec. Dig. § 396.*]

5. HUSBAND AND WIFE (§ 257*)—SEPARATE PROPERTY—INCREASE OF STOCK.

Under Rev. Codes Idaho, § 4479, which exempts from execution against a husband property which belonged to the wife when she married, and the profits, etc., thereof, the increase of live stock bought with the wife's separate funds does not become community property, under section 2680, which provides that certain property shall be community estate.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 904–908, 910; Dec. Dig. § 257.*]

6. BANKRUPTCY (§ 138*)—ASSETS—CROPS.

Crops not sown at the time of the adjudication did not become part of bankrupt's estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 193–209; Dec. Dig. § 138.*]

Petition for Revision of Proceedings of the District Court of the United States for the Northern Division of the District of Idaho, in Bankruptcy.

In the matter of Frank M. Pindel, bankrupt. On petition by Sarah E. Pindel, and cross-petition by Norman J. Holgate, trustee, to review an order relating to land claimed as a homestead. Affirmed.

This is a petition for review of the order and judgment of the District Court sitting in bankruptcy, made and entered in the matter of the estate of Frank M. Pindel, bankrupt. Pindel, the husband of Sarah E. Pindel, was adjudged a voluntary bankrupt February 14, 1910, and on October 7, 1910, Norman J. Holgate was appointed trustee. Among other assets of the bankrupt was a certain tract of land, upon which the home of the husband and wife was situated, described as follows:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Lots numbered 1, 2, 3, and 4 of section 34, and lots numbered 29, 30, 31 and 32 of section 27, in township 34 north of range 1, west of the Boise Meridian, Nez Perce county, Idaho, containing 160 acres, more or less."

This land was included in his inventory and appraisement of the bankrupt's estate by the trustee, who reported that it was claimed as a homestead by Mrs. Pindel, but was of the probable value of $9,000, and that a homestead of the value of $5,000 only could not be segregated and set apart without material injury to the tract. Thereupon the referee appointed three appraisers to appraise the real and personal property of the estate. Two of the appraisers made return (the third refusing to join with them) fixing the value of the land at $9,000.

Long prior to the institution of the proceedings in bankruptcy and the adjudication therein, namely, on February 15, 1909, the Bank of Nez Perce recovered judgment in the state court of Idaho against Pindel and wife for the sum of $5,382.28, under which an execution was issued and levied upon the land in question. Prior, however, to the entry of this judgment, the wife declared a homestead for herself and husband upon the premises, estimating that the value thereof did not exceed $5,000, and claiming the same as exempt from execution. The Bank of Nez Perce, contesting the right of Mrs. Pindel to claim the whole of said tract as exempt, filed in the district court of the Second judicial district for the state of Idaho, in and for Nez Perce county, a petition alleging that the premises were worth more than the lawful amount of a homestead exemption, and prayed the appointment of appraisers to report the value, and also whether the same could be divided without injury to the estate. The appraisers reported on December 30, 1909, appraising lots 29, 30, 31, and 32, section 27, and lots 3 and 4, section 34, at $5,000, and setting aside the same as the homestead of Mrs. Pindel and husband, but failed to report as to whether the land could be divided without material injury. Another report was made January 17, 1910, which with the erasures shows merely the description of the land and the value of lots 1 and 2 at $1,500, with no determination relative to the divisibility of the land. Without the erasures in this report, it would show the land except lots 1 and 2 appraised at $5,000, lots 1 and 2 at $1,500, aggregating $6,500, and a determination that lots 1 and 2 could be set off without material injury to the property. Why the erasures were made does not appear by the record. Objections were filed to these reports. While the same were pending, and before the state court had finally determined the matter of such homestead exemption, the bankruptcy proceedings were instituted, and Pindel was adjudged a bankrupt. About December 17, 1910, Pindel obtained leave to file an amended schedule B-2, by which was included additional personal property, consisting, among other things, of stock, horses, mules, cattle, and hogs, and at the same time filed an amendment to schedule B-5 claiming all of such additional property as exempted under section 4479 Revised Codes of Idaho, which exemption is in favor of the wife. Later, about January 5, 1911, Mrs. Pindel, alleging that she had duly made her declaration of homestead claiming all of said land therefor and as exempt, and that it had been duly appraised at $5,000, petitioned the District Court to stay the proceeding before the referee, and to have the matters in dispute heard and determined by the court. The court, after hearing the matters and things presented for its consideration, found:

(1) That the hogs referred to in the petitions were exempt.

(2) That the crops referred to in the evidence and argument of counsel did not become a part of the estate.

(3) That certain horses and cattle referred to and described in the pleadings are the separate property of Mrs. Pindel.

(4) That the 160-acre tract of land is of the value of $9,000. "That the same is the homestead of the bankrupt and his wife, Sarah E. Pindel, the latter of whom filed a declaration of homestead thereon prior to the commencement of these proceedings. That the value thereof has never been adjudicated or determined by the probate court of Nez Perce county, Idaho, or by any other tribunal. That the lands embraced in said homestead cannot be

segregated or divided without material injury, and that therefore it is for the best interests of all concerned that the same be held as a single tract."

Thereupon the court made decree as follows:

"It is therefore ordered that, if, within 30 days from the date hereof, the bankrupt shall pay or cause to be paid to the trustee in bankruptcy herein, for the benefit of the creditors of the estate, the sum of $4,000, said entire tract be set apart as the homestead of the bankrupt, and that the same be free and exempt from all further claims of the trustee in bankruptcy. If the bankrupt fails to make the payment of said amount within the time specified, the trustee is authorized to take the necessary steps, and to sell, in the manner provided by law, and under the direction of the referee in bankruptcy, the entire tract, for not less, however, than the sum of $5,000, and that, out of the proceeds of such sale, the trustee pay over to the bankrupt and to his wife, Sarah E. Pindel, the sum of $5,000 and account for the balance, if any, of such proceeds as a part of the assets of the estate, to be distributed in due course of administration."

Revision of the order and decree thus rendered is sought by petition of Mrs. Pindel and cross-petitions of the Nez Perce Bank and the trustee.

Finis Bentley and Eugene O'Neill, for cross-petitioners.

J. S. McDonald, Miles S. Johnson, Nisbet & Besly, and C. H. Lingenfelter, for cross-respondents.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] Objection comes, on the one hand, by the wife of the bankrupt, that the District Court was wholly without jurisdiction to determine her rights or those of the bankrupt to the homestead, and that that was a matter resting entirely with the state court. On the other hand, it is asserted that the District Court erred in directing that the exemptioner pay the sum of $4,000 into the estate, otherwise that the homestead be sold for a sum not less than $5,000, and when sold that the said sum of $5,000 be paid to Mrs. Pindel, and the surplus, if any, to the trustee, and it is urged that, the homestead claimed being of greater value than $5,000 and being indivisible without material injury, it should be sold for the best price obtainable, so that the estate might have the benefit of the utmost surplus value it would bring in the market.

It is settled law that exempt property, under the policy and purpose of the bankruptcy act, does not pass to the trustee of the bankrupt, nor does it become, or is it to be considered, a part of the bankrupt's estate for administration or distribution among the creditors thereof. Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061. This is said of the title to property generally exempted by state laws, and it must hold true whether the property is in specie—that is, separable and segregated from other property of the estate—or commingled and undivided or indivisible from such other property. There must not be confusion, however, between the title and the present right to possession, and the manner of its treatment while the precise property is being ascertained and determined to which the bankrupt is entitled as exempt. Perhaps in all cases where the exact specie or particular lot or parcel of property legally exempt is segregated and wholly distinct from the general mass of

the property the bankrupt not only has the title, but is entitled to maintain the present possession and to enjoy it continuously as his own, for it is made the duty of the trustee to "set apart the bankrupt's exemptions and report the items and estimated value thereof to the court as soon as practicable." Clause 11, § 47, Bk. Act. Where, however, the exempt property is not segregated or capable of being readily set apart from other property, and it might be said is indivisible except through some appropriate process of the court, the bankrupt cannot come into his exemption until the essential separation and setting apart for that purpose have taken place. The trustee is vested with the title to the bankrupt's property as of the date he was adjudged a bankrupt, "except in so far as it is to property which is exempt." Section 70, Bankruptcy Act. And the bankruptcy courts are invested with jurisdiction—such jurisdiction in law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, and among other things to "determine all claims of bankrupts to their exemptions." Clause 11, § 2, Bk. Act. It results from this jurisdiction and authority conferred upon the bankruptcy courts that, where exempt property is not readily divisible from the mass of the estate without the necessary inquiry to determine the fact of segregation and the specific property which is really exempt, the court has authority over the property for the time being at least, wheresoever the very title may rest, and it possesses the power to regulate the time and manner in which the exemption shall be claimed and set apart to the ultimate use and benefit of the bankrupt. These propositions are well supported by authority. In re Friedrich, 100 Fed. 284, 40 C. C. A. 378; In re Oderkirk (D. C.) 103 Fed. 779; In re Mayer, 108 Fed. 599, 47 C. C. A. 512; In re Kane, 127 Fed. 552, 62 C. C. A. 616; Lipman v. Stein, 134 Fed. 235, 67 C. C. A. 17.

As was said in the Kane Case:

"Courts of bankruptcy are not controlled as to the time or the manner in which claims for exemptions may be preferred in bankruptcy. The exemptions provided by the law of the state are allowed by the bankruptcy act, but the manner of claiming such exemptions, and of setting apart and awarding them, is regulated by the bankruptcy act."

[2] Now, to recur to the conditions attending the present controversy: The statutes of Idaho provide that a homestead may be claimed not exceeding $5,000 in value. In order to select the homestead, the husband or head of a family must execute and acknowledge, in the same manner as a conveyance of real property is acknowledged, the declaration of homestead, and file the same for record. It is then provided what the declaration shall contain, how verified, etc., and it is declared that, from and after the time the declaration is filed of record, the premises therein described constitute the homestead. Sections 3196, 3198, 3199, and 3201, Revised Codes of Idaho. It is further provided that, when an execution for the enforcement of a judgment is levied upon the homestead, the judgment creditor may apply to the probate judge of the county in which the homestead is situated for the appointment of persons to appraise the value thereof. The form of petition, verification, etc., is prescribed, and it is provided

that a copy of the petition shall be served upon the claimant at least two days before the hearing; further, that at the hearing the judge may, upon proof of service of the copy of the petition and notice, and of the facts stated in the petition, appoint three disinterested residents of the county to appraise the value of the homestead. The appraisers are required to view the premises and appraise the value thereof, and, if the appraised value exceeds the homestead exemption, they must determine whether the land claimed can be divided without material injury. Within 10 days after their appointment, the appraisers are required to make report showing the appraised value and their determination upon the matter of a division of the land claimed. If from the report it appears to the judge that the land claimed can be divided without material injury, he must, by an order, direct the appraisers to set off to the claimant so much of the land, including the residence, as will amount in value to the homestead exemption, and the execution may be enforced against the remainder of the land. If, from the report, it appears that the land claimed exceeds in value the amount of the homestead exemption, and that it cannot be divided, the court is required to make an order directing its sale under the execution. At such sale no bid must be received unless it exceeds the amount of the homestead exemption. If the sale is made, the proceeds thereof to the amount of the homestead exemption must be paid to the claimant, and the balance applied to the satisfaction of the execution. Sections 3181, 3182, 3183, 3184, 3185, 3186, 3187, 3188, 3189, 3190, 3191, and 3192.

Now, it appears in this case that, before the appraisers in the state court had made a satisfactory report touching the indivisibility of the land or as to its value, and before the court had directed a sale of the homstead, the bankruptcy proceedings were begun and the adjudication in bankruptcy was had. By such proceedings the bankruptcy court acquired jurisdiction in the premises. It became and was its duty thereafter to determine the time and manner of setting aside the homestead to Mrs. Pindel, the claimant, and the matter was so adjusted, with the result above stated.

[3] It seems to be in conformity even with the Idaho statutes that, if the land is worth more than the value of a homestead, to wit, $5,000, it should be determined what its value is. This the court did; but, prior to directing the sale, it extended to the exemptioner the right to retain the homestead by paying to the trustee the amount that it was worth over and above the $5,000 exemption. This judgment of the court is assigned as error. We are of the opinion, however, that it is the policy of the bankruptcy act that the exemptioner should have the exemption in specie when it can be set aside to him. In re Manning (D. C.) 123 Fed. 180. That was what the court endeavored to do in the present case. The procedure by which the value of the property was ascertained seems to have been regular, and there is scarcely a question made but that the homestead claimed was worth approximately $9,000. We are also of the opinion that, by reason of the court's authority touching the manner of setting aside the homestead, it was empowered to require the property to be sold in the

event that the exemptioner was unable or declined to pay the $4,000 surplus into the estate. On this phase of the controversy, therefore, we hold that there was no error.

[4] The hogs referred to in the court's order consist of two shoats, and the offspring or pigs of one of them, eight in number. Mrs. Pindel claimed them, or rather the bankrupt for her, as being her individual property under section 4479 of the Idaho Code. Mrs. Pindel acquired the shoats from one Anderson, who procured some straw from her and gave in exchange therefor the two shoats. The straw was the product of 50 acres of a grain crop which was set aside to Mrs. Pindel by the court as exempt under an attachment and execution sale against the husband; the crop being produced on leased land. The eight pigs were born in May, 1910, some months after the husband was adjudged a bankrupt. We think, with the District Court, that these hogs were exempt under the Idaho statute, section 4480, wherein are exempted to an actual resident of the state two hogs with their sucking pigs. Although the claim for exemption was made under section 4479, which exempts certain property to a married woman from execution against her husband, this is a mere matter of mistake of the claimant, which ought not to preclude him of the proper exemption.

[5] The horses, mules, and cattle referred to in the decree of the court appear from the testimony and the record to be the separate property of the wife. They were so claimed by the bankrupt husband by his amended schedule B–5. Mrs. Pindel's testimony is all that is to be found in the record upon the subject. She testifies, in effect, that she bought certain stock with money derived from an estate that was left to her by her father and mother, and money the proceeds of sales of her own personal property. The money and property first acquired by her was acquired some 20 years ago; but it appears quite clearly that it was kept separate from her husband's property, and that its identity has never been lost by any commingling therewith.

Now, it is claimed that under section 2680 of the Idaho Revised Codes, which reads as follows:

"All other property acquired after marriage by either husband or wife, including the rents and profits of the separate property of the husband and wife, is community property,"

—the increase of the stock first purchased by Mrs. Pindel with her separate property became community property, and therefore was not exempt from execution and sale, and hence under the bankruptcy act is not exempt from administration by the trustee. This view overlooks section 4479, which reads:

"All real and personal estate belonging to any married woman at the time of her marriage, or to which she subsequently becomes entitled in her own right, and all the rents, issues and profits thereof, and all compensation due or owing for her personal services, is exempt from execution against her husband."

The Supreme Court of the state of Idaho has had the identical question under consideration in the case of Thorn v. Anderson, 7

Idaho, 421, 63 Pac. 592, and it was there held that such property is exempt from execution. We are bound by that authority, and we think it is applicable here, so the court did not err in setting aside the stock comprised in the bankrupt's amended schedule B–5 as exempt from execution against him.

[6] As to the crops referred to in the court's second finding, the contention that they should be included with the property of the bankrupt's estate is well answered by the court in the finding itself. They were not sown at the time of the adjudication in bankruptcy, and were not, and did not therefore become, a part of the estate, and the trustee acquired no interest therein.

It is further specified as error that the court did not find that the acts of the bankrupt precluded him from a discharge. We do not understand that the question of a discharge of the bankrupt was before the court for consideration at all, or in any way.

These considerations lead to an affirmation of the order and decree sought to be revised, and such will be the order of the court, with costs in favor of the respondent and cross-petitioner Norman J. Holgate as trustee of the estate of Frank M. Pindel, and against the petitioners and cross-respondents Frank M. Pindel and Sarah E. Pindel, his wife.