### SHERIDAN STATE BANK v. ROWELL et al.

(District Court, D. Oregon. April 6, 1914.)

No. 6028.

1. CONTRACTS (§ 264*)—RESCISSION—CONDITIONS PRECEDENT.

There must be a willingness and ability to perform on the part of one seeking a rescission, as well as a legal tender of whatever he has received under the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1184, 1185; Dec. Dig. § 264.*]

2. VENDOR AND PURCHASER (§ 97*)—RESCISSION BY VENDOR—TENDER.

Where, under a contract for the sale of land, deeds to the purchaser were placed in escrow for delivery upon payment of the balance of the purchase price, a tender by the vendor's assignee of a quitclaim deed from it was not a sufficient tender of performance to enable it to rescind the contract, as the purchaser was entitled to the original vendor's deeds, which were in escrow, especially where the assignor's title was imperfect; the deed to it from the vendor being defective.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 161, 162, 166; Dec. Dig. § 97.*]

3. BANKRUPTCY (§ 188*)—VENDOR'S LIEN—PRIORITY.

The holder of a note given for the purchase price of land had a purchase money lien on the land paramount to all other demands against it, and which was not affected by the purchaser's bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–289; 291–295; Dec. Dig. § 188.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

212 F.—34

4. BANKRUPTCY (§ 400*)—EXEMPTIONS—MARSHALING PROPERTY.

The setting aside of a homestead to a bankrupt did not impair a purchase-money lien, but necessitated a marshaling of the property, so as to preserve the homestead to the bankrupt, if possible.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. § 400.*]

5. BANKRUPTCY (§ 400*)—EXEMPTIONS—CLAIM OF EXEMPTION.

It is the ordinary and usual method, and the one sanctioned by the rules and forms in bankruptcy, for a bankrupt to claim her homestead exemption in the schedule attached to her voluntary petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. § 400.*]

6. BANKRUPTCY (§ 400*)—EXEMPTIONS—SETTING APART—OBJECTIONS AND EXCEPTIONS TO REPORT.

Where a bankrupt claimed her homestead exemption in the schedule attached to her voluntary petition, but the trustee refused to set aside the homestead, whereupon she filed exceptions to his report, notice to the creditors of the hearing on such exceptions before the referee was unnecessary, as the objection to the report was but a continuation of the proceeding initiated by the claim for exemption, and the trustee or creditors could have the proceedings certified to the court for adjudication or review.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. § 400.*]

7. BANKRUPTCY (§ 400*)—SALES—DISPOSITION OF PROCEEDS.

Upon the sale of a homestead set apart to a bankrupt to satisfy a purchase-money lien, any surplus should be paid to the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. § 400.*]

In Equity. Suit by the Sheridan State Bank against Lee Rowell, trustee in bankruptcy of Ida L. Myers and others. Decree for plaintiff.

Ralph A. Coan and Harry H. Pearce, both of Portland, Or., for plaintiff.

McCain, Vinton & Burdett, of McMinnville, Or., and W. O. Sims, of Sheridan, Or., for defendants Ida L. Myers and S. A. D. Myers.

R. L. Conner, of McMinnville, Or., for trustee.

WOLVERTON, District Judge. This suit was instituted June 11, 1913, against the defendants, with the purpose of having rescinded a certain contract, entered into on February 27, 1909, between Lizzie Millsap and Ida L. Myers, whereby Mrs. Millsap placed in escrow with the plaintiff, Sheridan State Bank, two deeds duly executed, conveying certain real property and an easement appurtenant thereto to Mrs. Myers, the deeds to be delivered by the bank to Mrs. Myers upon the payment by her of $1,300, the balance of consideration for said premises, in one year from date, with interest at 7 per cent., for which a promissory note was given; the entire consideration being $1,800, $500 of which was paid down. Mrs. Myers went into possession, and subsequently constructed two houses upon the premises, at a cost of $2,000, and paid the interest on the note to the bank up to February 26, 1912. On December 10, 1912, Mrs. Millsap, who had previously intermarried with J. D. Nairn, assigned her interest in the contract to the

bank. Mrs. Myers was, by her voluntary petition, adjudged a bankrupt on December 31, 1912, and the defendant Lee Rowell was in due course appointed trustee in bankruptcy of her estate. By her Schedule B accompanying the petition Mrs. Myers claimed certain of the premises described in the deeds placed in escrow as her homestead and exempt from the operation of the bankruptcy act. The trustee made report, refusing to set aside the exemption, and thereupon Mrs. Myers filed objections or exceptions to the report, and the matter was brought on for hearing before the referee in bankruptcy. After consideration, the referee ordered and directed the trustee to set aside the premises to Mrs. Myers pursuant to her claim, the order having been made and entered March 15, 1913. In compliance with such order, the trustee, on March 17th, set aside the premises to claimant as her homestead exemption. Prior to this date, namely, on February 26, 1913, the bank gave Mrs. Myers written notice that if the note and interest accruing thereon were not paid on February 27, 1913, it would declare the contract forfeited. Following this up, the bank, on May 15th, tendered to the trustee and Mrs. Myers, each in turn, a quitclaim deed from the bank to Mrs. Myers, to the premises described in the Millsap deeds in escrow, together with the $500 paid on the contract, with interest at 6 per cent. from the date of payment, and $2,000, the value of the improvements, less $1,540 claimed as rental from the date of the contract, and thereupon demanded a rescission of the contract, which was refused. At the time of this alleged tender the bank claimed title to the premises through the assignment of the contract between Mrs. Millsap (then Mrs. Nairn) and Mrs. Myers, and a quitclaim deed from Mrs. Nairn and her husband, defective in that the easement was omitted from the description of the premises. The omission was corrected by a subsequent deed, but not until May 21st, which could not aid the tender.

The question primarily for decision is whether plaintiff has made a sufficient tender to entitle it to a rescission of the contract.

[1] There must be a willingness and ability to perform on the part of one seeking a rescission, as well as legal proffer to return whatsoever he has received under the contract, so as to put the parties in statu quo, before a rescission can be insisted upon.

[2] Now, the tender made was of a quitclaim deed executed by the bank to Mrs. Myers, not the deeds of Mrs. Millsap which were deposited in escrow to be delivered to Mrs. Myers when she paid the consideration in full. This was clearly not a sufficient tender of performance. Mrs. Myers was entitled, under the contract, to Mrs. Millsap's deeds, and a proffer of the delivery of the deed of some other person to the premises was not equivalent to a proffer of performance. The very question was determined in Wollenberg v. Rose, 45 Or. 615, 619, 78 Pac. 751, 752, where it was said:

"But a third party, a stranger to the undertaking, could not discharge the obligation, though in a position to convey a good and sufficient title, for the very good reason that the vendee has not contracted for his deed, but for that of the vendor, or, in case of his death, that of his heirs, legatees, or personal representatives."

See, also, Taylor v. Porter, 1 Dana (Ky.) 421, 25 Am. Dec. 155, and Farm Land Mortgage Co. v. Wilde (Okl.) 136 Pac. 1078.

In the present case, Mrs. Myers had not only contracted for Mrs. Millsap's deeds, but the very deeds which she was to have were drawn and executed and agreed upon, and deposited in escrow to be handed to her on payment of the full consideration, and it is not a compliance for an assignee of the vendor to tender its deed, and not the deeds of Mrs. Millsap which were in escrow. Besides, this, the bank's title was imperfect, and it could tender no better title than it had. It follows, without taking note of other objections, that the plaintiff is not entitled to rescission as its relief.

[3] The case, however, will admit of relief by way of foreclosure of the purchase-money lien which the bank has upon the premises; it being the holder of the note given as evidence of the balance due on the purchase price. This lien is paramount to all other demands against the property, and is not displaced in any way by reason of the bankruptcy proceedings; that is to say, the lien continues in its full force notwithstanding the vendee has been adjudicated a bankrupt.

[4] There has been set aside to Mrs. Myers by the referee in bankruptcy, however, her homestead out of this property. And it may be added that this does not impair plaintiff's lien; but it does present a question of marshaling the property, so that her homestead may be preserved to her, if possible.

[5] It is urged that the homestead has not been regularly assigned. The bankrupt claimed her homestead exemption in the schedule attached to her petition, praying that she be adjudged a bankrupt. This is the ordinary and usual method of making such claim, and the one sanctioned by the rules and forms prescribed by the Supreme Court in bankruptcy proceedings. The trustee refused to set aside the homestead, to which the petitioner filed exceptions, and a hearing was had before the referee, resulting in the homestead being assigned. The bank was represented at that hearing, although it seems to think it was not. To my mind the evidence shows clearly enough that counsel representing the trustee were also present in the interest of the bank. The bank was about the only creditor of the estate. The attorneys representing the trustee had previously brought an attachment for the bank against Mrs. Myers, and the bank's officers were in attendance at the hearing, no doubt at the attorneys' instance, to protect its claim. The protection of its claim, as it was supposed, was in resistance to the setting aside of the homestead; otherwise there would have been no objection or resistance thereto. So that if the appearance was nominally for the trustee, it was in reality for the bank.

[6] But if there had been no appearance and no notice to the bank other than that imported by the record, the proceeding to set aside the homestead was sufficient. The objection to the trustee's report was but a continuation of the proceeding initiated by making the claim for exemption in Schedule B, and no notice to creditors of the hearing to be had before the referee was necessary or required. Either the bank or the trustee might have had the proceedings before the referee certified to the court for adjudication or review, and such was their rem-

edy. See General Order No. 17 (89 Fed. viii, 32 C. C. A. xix), McGahan v. Anderson, 113 Fed. 115, 117, 51 C. C. A. 92, In re Reese (D. C.) 115 Fed. 993, and In re Maxson (D. C.) 170 Fed. 356, 359.

The order of the referee, therefore, must be held valid and binding upon the trustee and the bank, but it did not deprive the bank of its lien upon the premises, nor was there any attempt to do so. The trustee was proceeding regularly in selling that portion of the premises not comprised by the. delimitation of the homestead, and if he had been allowed to proceed, the bank would have received an amount sufficient to discharge the lien in full, and the homestead would have been wholly relieved of it.

[7] Seeing that the cause is in a court of equity with adequate jurisdiction and power to do justice, the plaintiff will be awarded a decree foreclosing its lien upon the premises, with direction that that portion of the premises not comprised by the homestead be first sold, and the proceeds thereof applied to the discharge of the lien, if sufficient for that purpose. If not, then that the homestead be sold and the proceeds applied to any balance remaining due, with the privilege, however, to Mrs. Myers to discharge such balance and thereby preserve her estate from sale, the privilege to be exercised within 60 days after the sale of the premises not comprised by the homestead. Any surplus remaining of the homestead should be paid to Mrs. Myers. Bank of Nez Perce v. Pindel, 193 Fed. 917, 113 C. C. A. 545. Of course, if the portion first sold brings more than sufficient to discharge the lien, the surplus should be paid to the trustee for the benefit of the estate. When plaintiff's lien is discharged, if the homestead be not sold, the bank will be directed to deliver to Mrs. Myers the escrow deeds deposited with it by the parties to the contract of sale, and also to quitclaim to her whatever interest it may have in the premises comprised by the homestead.

I find that the interest has been paid on the demand, namely, the $1,300 note, to February 27, 1912, and the decree will be for that sum and interest from the date to which it has been paid, without attorney's fees or costs.