PINDEL v. HOLGATE et al.

In re PINDEL.

(Circuit Court of Appeals, Ninth Circuit. March 18, 1915.)

No. 2439.

1. BANKRUPTCY ⌖⟿440—APPEAL OR REVISION AS PROPER REMEDY.

Under Bankr. Act July 1, 1898, c. 541, § 25 (3), 30 Stat. 553 (Comp. St. 1913, § 9609), authorizing appeals as in equity cases from a judgment allowing or rejecting a debt or claim of $500 or over, an order allowing such a claim was not reviewable by a petition to revise, as each method of procedure for the review of orders in bankruptcy is exclusive of the other.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. ⌖⟿440.]

2. BANKRUPTCY ⌖⟿439—APPEAL OR REVISION AS PROPER REMEDY.

Under Bankr. Act, § 24b (Comp. St. 1913, § 9608), providing that the several Circuit Courts of Appeal shall have jurisdiction to superintend and revise in matters of law the proceedings of the several inferior courts of bankruptcy within their jurisdiction, an order confirming the sale of the land of a bankrupt in which he had a homestead interest was properly reviewable in matters of law by a petition to revise.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. ⌖⟿439.]

3. BANKRUPTCY ⌖⟿446—REVIEW OF PROCEEDINGS—SCOPE OF REVIEW.

Though an order allowing a claim was not, standing alone, reviewable on a petition to revise, where there was only one other small claim, and the necessity for a sale of land in which the bankrupt had a homestead interest depended mainly upon the validity of the claim in question, the allowance of such claim would be reviewed on a petition to revise the order confirming a sale of the homestead.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. ⌖⟿446.

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

4. BANKRUPTCY ⌖⟿326—CLAIMS—COUNTERCLAIMS—ESTOPPEL.

A voluntary bankrupt in his schedules listed the claim of a bank based upon a judgment without mentioning any offset, and stated that he held no unliquidated claims or choses in action of any kind against any person, and in a proceeding to sell land in which he had a homestead inter-

est, in which the necessity for making the sale rested upon the assumption that the claim of the bank was valid, resisted a sale on other grounds. An order of sale was affirmed on appeal, and a sale had. On application for an order confirming the sale, the bankrupt, more than four years after the petition was filed, for the first time set up an offset or counterclaim for wrongful attachment in the action in which the bank's judgment was obtained. *Held*, that he was estopped by the representations in the schedules and the order of sale from setting up such counterclaim, as a judgment is an adjudication, not only of all defenses actually interposed, but of all which might have been interposed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514; Dec. Dig. ☞326.]

5. JUDGMENT ☞622—MATTERS CONCLUDED—CLAIMS FOR WRONGFUL ATTACHMENT.

Under the rule established in Idaho, a judgment concludes all claims for wrongful attachment in the action in which the judgment is obtained.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1136; Dec. Dig. ☞622.]

6. BANKRUPTCY ☞326—CLAIMS—SET-OFFS—LACHES.

Where, at the time a bankrupt sought to set up a claim for damages from an attachment as a counterclaim against the judgment obtained in the action in which the attachment was issued, an action by the judgment creditor against the sheriff for his negligence in caring for the attached property was barred by Rev. Codes Idaho, § 4055, subd. 1, requiring actions against sheriffs upon a liability incurred by the doing of an act in their official capacity and by virtue of their office, or by the omission of an official duty, to be brought within two years, and an action against the judgment creditor would have been barred· by section 4054, subds. 2, 3, requiring actions for trespass upon real property and for taking or injuring personal property to be brought within three years, the bankrupt was barred by his laches from setting up such claim.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514; Dec. Dig. ☞326.]

7. BANKRUPTCY ☞326—CLAIMS—SET-OFFS—UNLIQUIDATED DAMAGES.

In a bankruptcy proceeding, a claim for unliquidated damages for a tort could not be set off against a claim upon a judgment, whether the matter was controlled by Rev. Codes Idaho, § 4184, providing that a counterclaim must be a cause of action arising out of the transaction set forth in the complaint as the foundation of plaintiff's claim or connected with the subject of the action, or, in an action arising upon contract, any other cause of action also arising upon contract, or by· Bankr. Act, § 63 (Comp. St. 1913, § 9647), specifying in subdivision "a" the claims which may be proved, and providing in subdivision "b" that unliquidated claims may be liquidated in such manner as the court shall direct, and may thereafter be proved and allowed against the estate, and section 68 (section 9652) providing for a set-off of mutual debts and credits, and providing that a set-off or counterclaim shall not be allowed which is not provable against the estate, as section 63b does not enlarge the scope of subdivision "a," and unliquidated claims arising out of torts are not covered by subdivision "a."

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514; Dec. Dig. ☞326.]

Petition to Revise in Matters of Law Certain Orders of the District Court of the United States for the Central District of Idaho, in Bankruptcy.

In the matter of Frank M. Pindel, bankrupt, of whose estate Norman J. Holgate was appointed trustee. On petition by the bankrupt to

revise in matter of law, under section 24b of the Bankruptcy Act of July 1, 1898, orders reversing orders of the referee- and allowing a claim of the Bank of Nez Perce and confirming a sale of the homestead. Affirmed.

Edwin H. Williams, of San Francisco, Cal., and Ben F. Tweedy, of Lewiston, Idaho, for petitioner.

Finis Bentley, of Lewiston, Idaho, for trustee.

Eugene O'Neill, of Lewiston, Idaho, for claimant.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The controversy involved in this case was before this court on a petition for revision of an order in bankruptcy proceedings in the District Court of the United States for the District of Idaho, in the case of Bank of Nez Perce v. Pindel, 193 Fed. 917, 113 C. C. A. 545. The Bank of Nez Perce had recovered a judgment in the state court of Idaho against Frank M. Pindel, on February 15, 1909, for $5,382.28. Upon this judgment the proceeds of the sale of certain attached property, amounting to $1,956.-25 had been credited, leaving a balance of $3,426.03. While proceedings were still pending in the state court upon this judgment upon a claim of homestead made by the judgment debtor, he filed his petition in voluntary bankruptcy in the United States District Court for the District of Idaho. The petition was filed on February 10, 1910, and on February 14, 1910, Pindel was adjudicated a bankrupt, and thereafter a trustee was regularly appointed. In Pindel's petition in bankruptcy he listed the balance of the judgment in favor of the Nez Perce Bank as an unsecured claim against his estate. No set-off or counterclaim was stated.

The question before this court upon revision related to certain exemptions of property claimed by the bankrupt under the statute laws of Idaho and the Bankruptcy Act. Among others was the claim of homestead which had been pending in the state court: The judgment of the state court in favor of the bank and against the bankrupt, and the balance due thereon, were not questioned by the bankrupt or his wife. The statutes of Idaho provide that a homestead may be selected and claimed by the head of a family of not exceeding $5,000 in value. Where the homestead is of a value exceeding $5,000, a method of procedure is provided in execution proceedings whereby, if the land claimed can be divided without material injury, it shall be so divided, and a homestead, including the residence, of the value of $5,000, be set apart for the claimant, and execution enforced against the remainder; but if the land cannot be so divided it shall be sold and out of the proceeds of sale $5,000 shall be paid to the homestead claimant. The District Court, in the exercise of its jurisdiction "to determine all claims of bankrupts to their exemptions" (clause 11, § 2, Bankruptcy Act [Comp. St. 1913, § 9586]), found the value of the property claimed as a homestead to be $9,000, or $4,000 in excess of the exemption provided in the state law. The court directed that upon the payment into court by the bankrupt, for the benefit of the creditors of the estate, of the sum of $4,000 within

30 days, the entire tract should be set apart as a homestead. In default of such payment the trustee was authorized to sell the land, under the direction of the referee in the manner provided by law, for not less than $5,000. Out of the proceeds of the sale $5,000 was to be paid to the bankrupt and his wife, and the balance, if any, was to be distributed in due course of administration. Being dissatisfied with this order of the court, the bankrupt and his wife petitioned this court for a revision of the order, on the ground that the District Court was without jurisdiction to determine their homestead rights, and that the matter rested entirely with the state court. It was also contended that the District Court erred in directing that the exemptioner pay the sum of $4,000 into the estate; otherwise, that the homestead be sold for a sum not less than $5,000, and when sold that the said sum of $5,000 be paid to Mrs. Pindel, and the surplus, if any, to the trustee. In the petition to this court the petitioners alleged "that the Bank of Nez Perce, with a claim of $3,427.93, and C. C. Triplett, with a claim of $70.85, were the only judgment creditors." No question was raised as to the balance due the bank, nor was any claim made that there was any set-off or counterclaim as against the bank. The order of the District Court was affirmed. 193 Fed. 917, 113 C. C. A. 545.

Upon the question there reviewed the decision of this court became the law of the case. The mandate of this court was sent down on October 21, 1912, and thereafter, and after the bankrupt had refused to pay the trustee for the benefit of the creditors of the estate the sum of $4,000, a sale of the property was ordered, and a sale was made for the sum of $10,500 (being $5,500 in excess of the exemption). Thereupon the referee, upon petition of the trustee, proceeded with a hearing which involved, among other things, a set-off or counterclaim of the bankrupt against the judgment of the Bank of Nez Perce and also the confirmation of the sale of the property. The result of this hearing was an order of the referee providing, among other things, that the claim of the Bank of Nez Perce be disallowed, because of a set-off or counterclaim exceeding the judgment, and that the sale of the homestead be not confirmed. The trustee in bankruptcy and the bank thereupon petitioned the District Court for a review of this order of the referee.

Upon a hearing before the District Court, the order of the referee was reversed, the claim of the bank was allowed for the principal sum of $3,294.53, together with interest thereon at the rate of 7 per cent. per annum from February 15, 1909, to February 10, 1910, the date of the filing of the petition, amounting to $227.30, making a total of $3,521.83, interest to be thereafter allowed pursuant to the general rules of law and as the facts might warrant. The set-off or counterclaim was disallowed. The order further provided that the order of the referee refusing to confirm the sale of the homestead be reversed, and that the sale be confirmed. Such confirmation was not, however, to become absolute or final until the expiration of 35 days from the date of the order, and if during that period the bankrupt or his wife should cause to be paid to the trustee the sum of $5,500

(being the excess over the exemption of $5,000), with interest at the rate of 7 per cent. per annum until paid, to be applied and distributed as assets of the estate, thereupon the order should become of no effect, and said lands and the whole thereof should be set apart as the homestead of the bankrupt and his wife, and should be exempt from administration and free from all claims of creditors. Upon the other hand, if the payment was not made within the time specified, upon the expiration of said period the order should be deemed to be final, and the trustee should, upon receiving the full purchase price, execute and deliver to the purchaser or his assigns a proper instrument of conveyance, and said conveyance should be deemed to relate back to the date of the order. The bankrupt is dissatisfied with these orders, and now petitions this court for a review of these two orders of the District Court in matters of law, under section 24b of the Bankruptcy Act.

It is assigned as error that the District Court erred in reversing the order of the referee, disallowing the claim of the Bank of Nez Perce, and allowing such claim, and in the conclusions of law allowing the claim of the bank against the bankrupt estate.

[1-3] Clause 3 of section 25 of the Bankruptcy Act provides that appeals as in equity cases may be taken in bankruptcy proceedings from the courts of bankruptcy to the Circuit Court of Appeals, from a judgment allowing or rejecting a debt or claim of $500 or over. It is obvious that the order of the District Court allowing the claim of the Bank of Nez Perce comes under this provision of the statute. Each method of procedure for the review of orders in bankruptcy is exclusive of the other. In the Matter of Loving, 224 U. S. 183, 32 Sup. Ct. 446, 56 L. Ed. 725; In re Mueller, 135 Fed. 711, 68 C. C. A. 349; Bothwell v. Fitzgerald, 219 Fed. 408, 135 C. C. A. 212. Standing alone, this order is, therefore, not reviewable on this petition. But it appears that the petition in bankruptcy was because of this claim against the petitioner. The only other claim against his estate set forth in the petition in bankruptcy was a small one, amounting to only $70.85. The sale of the homestead and the bankruptcy proceedings connected with the distribution of the estate are mainly dependent upon the validity of this claim, and the increase in the value of the homestead during the bankruptcy proceedings has made the homestead itself an important factor in the case. The order confirming the sale of the homestead is properly before us, and is reviewable, under section 24b, upon matter of law. In re Charles Knosher & Co., 197 Fed. 136, 116 C. C. A. 560. But we cannot review the question involved in that order without considering the validity of the claim of the bank. Whether the homestead shall be sold or not is the controlling question, but we cannot determine that question without knowing whether a sale of the homestead is in fact required to pay the debts of the estate; that is to say: Are there any creditors to whom the proceeds of sale will be distributed in the event a sale is made? If there are no debts, the only other ground for a sale would be to pay the expenses of the bankruptcy proceedings; but that question is not before us. In this situation of the case, we are of opinion that we may, in carrying out the

manifest purpose of the Bankruptcy Act, review the order allowing the claim as involved in the order of sale; but in such a review we are limited to questions of law.

[4] The evidence is not in the record, and the only question open to us is whether the findings of the court are sufficient to support the order of the court allowing the claim. There are no formal findings by the court, but they are sufficiently stated in the opinion of the court to enable us, with the record, to review the order upon its merits. In addition to the facts already stated, the court finds that the petitions and schedules in bankruptcy were filed by Frank M. Pindel on February 10, 1910, and the adjudication was made February 14, 1910, and thereafter a trustee was appointed for the estate; that in the schedules filed by the bankrupt the claim of the Bank of Nez Perce was listed for the amount of $3,427.93; that the claim was founded upon a judgment obtained by the bank against Frank M. Pindel and his wife, Sarah E. Pindel, in the state district court of Idaho on February 15, 1909, for $3,635.16, and costs taxed at $1,747.12, making a total of $5,-382.28; that upon this judgment there were credited the proceeds of the sale of certain attached property, amounting to $1,956.25, leaving a balance of $3,426.03, which, together with interest, constituted the claim as set forth in the schedules; that in the schedules of the bankrupt, under appropriate headings, he represented that he held no un-liquidated claims or choses in action of any kind against any person, and in the special proceeding relating to the sale of real estate, which resulted in the order of court providing for such sale, and which was brought to this court for review in the former case, and affirmed, the necessity for making the sale rested upon the assumption that the claim of the bank was valid; that in these proceedings the bankrupt and his wife resisted the making of the order of sale, but at no time was the validity of the judgment or the amount due thereon put in issue, nor was the suggestion ever made that the sale should not be ordered because there was no indebtedness to pay.

Referring now to the petition of the bankrupt and his wife in this court for review of the order of sale, we find that it was represented that the Bank of Nez Perce, with a claim of $3,427.93, and C. C. Triplett, with a claim of $70.85, were the only judgment creditors. The affirmance of the order of sale by this court left nothing to be done but to make the sale, or release the property to the bankrupt, in accordance with the terms therein provided. Referring now to the record, it appears that on March 1, 1913, a sale of the property was ordered, the bankrupt having refused to pay to the trustee the sum of $4,000 for the benefit of the creditors of the estate. It appears further from the record that the land was sold on April 5, 1913, after due notice published and posted, for the sum of $10,500. The return of sale was made on April 23, 1913, and an order of confirmation was asked by the trustee. To this return the bankrupt caused certain objections to be made, among others that there was nothing due to the Bank of Nez Perce, and he claimed damages against the bank for the taking of his wife's property under the execution issued by the state court. The damages claimed upon the hearing were for wrongful attachments,

and exceeded the judgment. These objections, setting up a set-off or counterclaim in the identical case heard and determined in the state court, were filed more than four years after the bankrupt had filed his petition in bankruptcy, wherein he had listed the balance due the bank as an unsecured claim against the estate, and no set-off or counterclaim was stated. It appears further that under appropriate headings in the schedules the bankrupt represented that he held no unliquidated claims or choses in action of any kind against any person. The bank and the trustee answered the objections of the bankrupt, and thereupon the referee proceeded to a hearing upon the issues thus presented.

[5] The evidence taken upon this hearing is, of course, not in the record. The judge of the District Court, referring to it, says:

"A voluminous and complicated record is presented, a mere sketch of which would be of inordinate length, and therefore I shall attempt little more than to state in brief the reasons upon which my conclusions are based."

The conclusions which the court drew from the record are, however, sufficiently supported by the facts already stated. The court says:

"Surely, if there had been any suggestion of the issue now presented for the first time, the court would not have ordered a sale to pay a debt which might, in fact, prove to have no existence at all. It would have required that issue to be first tried out. That was the time for the bankrupt to speak, and to claim his defense, if any he had. The courts will not try a controversy in piecemeal. There must be an end to litigation. The bank was then seeking a sale of the real estate for the payment of its claim. If we credit him, the bankrupt had two defenses. He pleaded one of them, went to trial, failed, went to the appellate court, again failed, and after all the delay and expense, and when the order of sale is about to be made effective, he draws from its concealment his other defense. Under a familiar rule, he should not again be heard. A judgment is an adjudication, not only of all defenses actually interposed, but as well all of which might have been interposed. It is thought that not only by the representations made in the schedules, but by the order of May 20th, the bankrupt is estopped from setting up the counterclaims at this time. * * * The judgment in the state court is unquestionably valid, and the sale of the attached property was legally made. Under the rule established by the Supreme Court of the state, the judgment concluded all claims for wrongful attachment. Willman v. Friedman, 4 Idaho, 209, 38 Pac. 937 [95 Am. St. Rep. 59]."

[6, 7] Referring to a claim that the property was worth more than it sold for, and that it might have had better care, the court says:

"It is, of course, easy enough at this late date to produce opinion testimony tending to show that the property was worth much more than it sold for, and that it might have had better care. Upon such an issue the passing of time usually operates in favor of the claimant and against the officer, especially in cases where, as here, the officer is without notice that any claim of damages will be asserted, and therefore has no reason to fortify himself by gathering and preserving the necessary evidence. It was doubtless for that reason that the Legislature has provided (section 4055, subd. 1, Revised Codes of Idaho), that an action upon such a claim against an officer must be commenced within two years from the time the cause of action accrues. The theory of the law urged by counsel for the bankrupt is that the defendant may maintain his action against the plaintiff for the negligence of the sheriff in executing the writ, and that the plaintiff's remedy in turn is against that officer and his bondsmen. But here the defendant waits until any remedy the bank may have

had against the sheriff is cut off by the statute of limitations, and then for the first time asserts his claim. As a further consideration it is to be observed that upon his appointment these counterclaims vested in the trustee, and it is apparent that if he had brought a plenary suit thereon against the bank at the time they were first put forward by the bankrupt in this proceeding, section 4054, subds. 2, 3, of the Idaho Revised Codes, providing for a three-year period of limitations for actions for trespass upon real property and for taking or injuring personal property, could have been successfully pleaded in bar. While in terms these statutes do not apply to a proceeding of this character, the principle is the same; in equity the bankrupt should be held to be barred by his own laches.

"Thus far the discussion has been upon the assumption that a claim for unliquidated damages for a tort may be set off against a claim upon a judgment; but may this be done? If the question be referred to the Idaho Statutes, it is plain that under section 4184 of the Revised Codes the answer must be in the negative, for clearly the claim does not fall within subdivision 2 thereof, and in so far as it comes within the first subdivision, it should have been set up in the original action, and must therefore be held to be barred or extinguished under the rule of section 4185 and Willman v. Friedman, supra. If the view be taken that the Idaho Statutes do not apply, and that the question is to be referred to the Bankruptcy Act alone, seemingly the same conclusion is unavoidable. Section 68 provides for a set-off of 'mutual debts and credits,' but declares that a counterclaim cannot be allowed in favor of a debtor unless the claim is provable against the estate. Section 63 defines the claims which may be proved, and provides in subdivision 'b' that 'unliquidated claims against a bankrupt may, pursuant to application to the court, be liquidated in such a manner as it shall direct and may thereafter be proved and allowed against the estate'; but this provision is held not to enlarge the scope of subdivision 'a,' and unliquidated claims arising out of torts, such as are here relied upon, are not covered by subdivision 'a.' See Remington on Bankruptcy, §§ 704, 705, 706, and cases cited thereunder. In Becker Brothers [D. C.] 139 Fed. 366, the precise question was involved. The impropriety of the course here pursued is shown in the counterclaims. He [the referee] simply finds that they exceed the bank's claim; but if they may be waged as counterclaims at all, and if this proceeding be adopted as a method for the liquidation of the damages growing out of the alleged torts, they should be fully liquidated and determined, so that the estate may have the benefit of the surplus, if any there be, after offsetting the claims of the bank."

In these conclusions we entirely concur. We need not, therefore, enter into a useless discussion of the various phases of the controversy as presented by the briefs in this court; but after a careful consideration of all the matters therein stated we are entirely satisfied with the orders of the District Court allowing the claim of the Bank of Nez Perce and ordering confirmation of the sale of the property.

The orders of the District Court are accordingly affirmed.