### HAIGHT v. HAIGHT & FREESE CO.

(Supreme Court, Special Term. March 7, 1905.)

1. STOCKBROKERS—RELATIONSHIP—ACCOUNTING.
   The relationship existing between a stockbroker and his customer being fiduciary in character, an action will lie for an accounting between them, wherein the burden is on the broker to show that his trust duties have been performed, and the manner of their performance.

2. SAME—INTERMEDIATE ACCOUNTS—EFFECT.
   In an action by a customer against a stockbroker for an accounting, the fact that so-called accounts had intermediately been rendered did not de-

prive the customer of his right to a full and complete accounting of all the broker's dealings on his behalf.

3. SAME—PERFORMANCE OF EMPLOYMENT—AUTHORITY OF BROKER.

Orders to buy and sell stock on margin contained certain printed matter on the back which authorized the orders to be executed in any city or place, on any exchange, or by private sale, as the broker might elect, and declared that any other of his clients might be the purchaser (in case of a sale) or seller (in case of a purchase), but that the broker should not be obliged to disclose the name of any client in any event. *Held*, that such provisions, not brought to the customer's knowledge, were void for unreasonableness and as against public policy.

4. SAME—DOUBLE COMMISSIONS.

Plaintiff directed defendant, as a stockbroker, to make certain purchases and sales of stock on margins, believing the transaction to be one of legitimate brokerage; but defendant neither bought nor sold stocks, either for plaintiff or other customers, but merely carried on his business by a system of bookkeeping by which he charged sales by one person against purchases by another, charging commission to both and interest on balances. *Held*, that the transaction was illegal and void, and that plaintiff was entitled to recover the amount deposited with defendant as margins, with interest.

Action by one Haight against the Haight & Freese Company. Judgment for plaintiff.

W. P. Maloney, for plaintiff.
F. Fahey, for defendant.

DOWLING, J. The defendant, the Haight & Freese Company, is a corporation engaged in the business of buying and selling stocks, as stockbrokers, upon margin and otherwise. To them the plaintiff came in the ordinary course of business, and during the year 1902 intrusted to them various sums of money as margins, upon a 10-point basis, to be used in the purchase and sale of various shares of stock as ordered by plaintiff at intervals during said period; in all these transactions the defendant acted as plaintiff's broker and agent. Plaintiff alleges a course of dealing on defendant's part, whereby the transactions reported to plaintiff upon his orders for purchases and sales were in fact mythical and fictitious, and whereby defendant was exacting and receiving double commissions, and also interest upon the same fictitious transactions. Plaintiff asks that defendant render a full and true account of all its transactions in stocks which it claims to have had for and on account of the plaintiff, and of the disposition of plaintiff's moneys and securities, and, in case of defendant's ability to show any purchases and sales made on plaintiff's behalf, that defendant account; while, if such purchases and sales have not been made, that plaintiff have judgment for the balance of his moneys in defendant's possession. Upon the trial it was proved that the balance of plaintiff's moneys in defendant's possession over withdrawals made by him amounted to $8,446.90, and the interest thereof to $1,340.35, being the aggregate of the various accounts opened for plaintiff's benefit with the defendant. Defendant claims that plaintiff's funds were exhausted by the adverse course of his dealings with it, and that on October 10, 1902, after giving plaintiff notice to make adequate his margin,

which he failed to comply with, it sold out plaintiff's account and left him in defendant's debt. It is conceded that defendant in this action was acting as plaintiff's agent and broker. Such a relationship is a fiduciary one, and an action will lie for an accounting therein, wherein the burden will lie upon the agent to show that his trust duties have been performed, and the manner of their performance. Marvin v. Brooks, 94 N. Y. 71; Dos Passos on Stockbrokers, 686. The fact, even, that other so-called accounts had intermediately been rendered, would not deprive plaintiff of his right to a full and complete account of all defendant's dealings on his behalf. Jordon v. Underhill, 91 App. Div. 124, 86 N. Y. Supp. 620. Defendant has sought to account for its dealings with plaintiff's funds by certain alleged transactions in conformity with his instructions for purchases and sales of specified stocks. To establish these, it admits that no shares of stock were actually bought or sold for plaintiff's account, pursuant to his instructions, but claims that it had the right to offset orders from its various customers, so that it discharged plaintiff's order to buy by setting against it an order or orders from other customers to sell a similar amount of the same stock, and vice versa. This it seeks to do under a printed form upon the back of the orders to buy and sell, which were signed by the plaintiff or defendant's employés on plaintiff's behalf, which in effect provided that the order might be executed in any city or place, either on any exchange through a member thereof, or by private sale, as the Haight & Freese Company might elect, and any other of their clients might be the buyer (in case of a sale) or seller (in case of a purchase), but the Haight & Freese Company should not be obliged to disclose the name of any client in any event. These alleged agreements so printed on the back of defendant's order blanks, so far as they are sought to be used to protect defendant in its unwillingness or inability to furnish the names of the clients whose orders were offset against plaintiff's, are unreasonable, against public policy, and void, nor were they brought home to plaintiff's knowledge. Wagner v. Haight & Freese Co. (Sup.) 89 N. Y. Supp. 323; Pearsall v. Western Union Telegraph Company, 124 N. Y. 256, 26 N. E. 534, 21 Am. St. Rep. 662; Sternaman v. Met. Life Ins. Co., 170 N. Y. 13, 62 N. E. 763, 57 L. R. A. 318, 88 Am. St. Rep. 625. When the plaintiff herein first entered into business relations with defendant, he signed a written agreement to maintain a 10-point margin, and there is no proof that he ever regarded the transaction save as one of legitimate brokerage, wherein stocks were to be bought and sold according to his orders. It is plain, however, that the defendant had no such theory of their relationship. It has not been able to show that it ever actually bought or sold a single share of stock pursuant to plaintiff's order. It followed out, as it now seeks to establish, a course of dealing by which it set off against plaintiff's orders reverse orders of other clients who desired to sell those stocks which plaintiff desired to buy, or to buy those stocks which plaintiff desired to sell. Neither party to the alleged transaction owned a single share of the stock in question, and the defendant did not act as a clearing house therein, but simply

made bookkeeping entries in the clients' accounts. The defendant's books of account were so kept that no one could ascertain from them the names of the persons with whom, as agent, they were dealing on their principal's account, as they should have done. Prout v. Chisolm, 89 Hun, 108, 34 N. Y. Supp. 1066. No witness was produced who could testify that he could tell from any entries in plaintiff's account with defendant who the other party was to any transaction entered therein, nor could he find any reference to the ledger account of the other party. There was some attempt made to carry out defendant's theory of offsetting accounts, by furnishing a list of their clients who had acted as the other party to the transactions. But this bore upon its face the evidence that it was an afterthought, and used only to meet the emergencies of the case, in view of the absence of any connecting reference in any of the ledger accounts. It was an easy matter to go over the accounts of their numerous customers and pick out enough orders to meet plaintiff's orders on each day. This was the easier, as defendant required its customers to deal in shares in amounts of 10, or multiples thereof. It was further sought to give an air of verisimilitude to defendant's business by producing a book known as the "C. H. Burt" book, supposed to be a book kept in defendant's office recording its transactions with a broker of that name, executing defendant's orders upon the Consolidated Exchange. An inspection of this book will demonstrate its more than suspicious character. No book kept in good faith in a legitimate business would be kept as this is. The party who kept it is not produced; it is supposed to have been kept in defendant's office, and yet the entries are on the reverse side from where they should appear if defendant kept it. No one has been called to verify any transaction recited in it, nor is the broker produced, nor any record to confirm it. It has been interjected into the case in a vain attempt to show some legitimate stock dealings, and hangs suspended, with no visible connection with any other of defendant's books of account. Upon these bookkeeping transactions, by way of alleged purchases and sales, commissions were charged to both the alleged buyer and seller, and interest on balances was charged them both. The charging of double commissions rendered the transaction illegal. Levy v. Loeb, 85 N. Y. 365. No single purchase or sale upon the floor of any exchange has been shown; not a single broker appears to testify to any dealing on plaintiff's account; no books of account have been produced that give the slightest hint of any bona fide sale or purchase. The transactions, as far as defendant is concerned, were fictitious sales and bogus purchases, and mere bookkeeping entries, with no solid foundation in fact. Defendant has not proved that it had on hand, or under its control ready for delivery, the shares of stock ordered to be bought for plaintiff's account. It never, in fact, intended to either buy or sell stocks. The nature of its business methods is best exemplified by the facility with which, after having mistakenly "closed out" plaintiff's account, and notified him that they had sold out his stocks and that he was in their debt, they "reinstated" him upon his calling defendant's attention to its mistake, and by ap-

propriate entries in its books he again became restored to his ownership of the stocks that had been sold out, by a mysterious process which none of defendant's agents could explain, and which only becomes comprehensible upon the theory that the whole proceeding was simply one of bookkeeping, and gambling against the market quotations, and not of purchase and sale. As was said in a somewhat similar case:

"It appears from this that, so far from buying the stock ordered by plaintiff and holding that or similar stock for him, the company had only to keep its contract to deliver to him, provided an agreement with some one in Boston or Syracuse or Little Falls to sell stock to it, or a like contract with some broker in New York, and it had no real delivery of shares. This is not such a performance as the law requires. In fact, it appears clearly that the only thing done by this company was to take the money of the plaintiff, falsely represent that it had bought the stock, and ask for more margin." Smith v. N. Y. Stock & Produce Clearing House Co., 25 N. Y. Supp. 261.

In this case defendant did not even go through the form of such a provision for the supplying of stock in case of an emergency. An accounting has become unnecessary now, as the state of plaintiff's account has been disclosed by the trial, and is not disputed.

Judgment for plaintiff for the balance of amount shown to have been received by defendant from him, $8,446.90, with interest, $1,340.35, in all $9,787.25, with costs and an additional allowance of 5 per cent. Settle findings and judgment on notice.