## EHRICH v. GRANT et al.

(Supreme Court, Appellate Division, First Department. February 9, 1906.)

1. INJUNCTION—IRREPARABLE INJURY—PLEADING—CONCLUSIONS.

Averments, in a complaint for an injunction to restrain the sale of certain syndicate subscription rights, that plaintiff would be irreparably damaged by such sale, and that he had no adequate remedy at law, were mere conclusions of law and ineffective without facts supporting them.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, § 228.]

2. SPECIFIC PERFORMANCE—REMEDY AT LAW—INADEQUACY—CONTRACTS—SALE OF STOCK.

The mere fact that a stock is not listed and sold, or offered for sale, so that a market value may be readily established, does not warrant the interposition of equity to decree specific performance of a contract with reference thereto, where the value of the stock or right can be otherwise ascertained and the damage established.

3. INJUNCTION—SALE OF RIGHTS—ADEQUATE REMEDY AT LAW.

Where, in a suit to restrain the sale of certain syndicate rights alleged to have been pledged to defendant, there was no intimation that defendant was not entirely able to pay plaintiff any damages he might sustain by reason of the sale of such rights, and it appeared that there would be no difficulty in determining the value of the rights when the syndicate was wound up, complainant was not entitled to an injunction restraining such sale.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, §§ 16, 17.]

Appeal from Special Term.

Suit by Samuel W. Ehrich against Hugh J. Grant, impleaded, with others. From an order continuing a temporary injunction against the defendant Grant during the pendency of the action, he appeals. Reversed.

Argued before O'BRIEN, P. J., and INGRAHAM, CLARKE, LAUGHLIN, and HOUGHTON, JJ.

John M. Bowers, for appellant.

Abraham Benedict, for respondent.

HOUGHTON, J. In the year 1902 the plaintiff was engaged in financing certain Nevada mining properties, and brought about the formation of what was called the De Lamar Gold Mining Syndicate. The operations were so successful that subscription rights sold above par, and the premium on such sales as plaintiff brought about belonged to him. While such subscriptions were thus commanding a premium, plaintiff avers that he permitted the defendant Grant to become a subscriber to the syndicate to the extent of $50,000 without premium, on the agreement that Grant should carry for plaintiff a subscription to the extent of $25,000 and pay such sums as might from time to time be demanded thereon, which sums plaintiff was not to repay until the winding up of such syndicate operations, when profits were to be applied as far as they would go, and, if there should remain any balance, that sum only to be paid by plaintiff. In furtherance of this agreement, as plaintiff claims, he gave to Grant on the 3d of July, 1902, his demand note for $22,500, and pledged as collateral security

for the payment thereof this right of participation in the De Lamar Syndicate, with right to sell the same on failure to pay the note. Defendant Grant advanced the whole sum to the syndicate, and in October, 1905, demanded payment of the note and gave notice that he would sell the collateral on a certain day in default of payment.

Thereupon the plaintiff brings this action in equity, asking that his rights under the agreement be adjudged, and that Grant be permanently and perpetually restrained from selling such collateral security, alleging that it is of great value, but so uncertain and so dependent upon the success of the mining operations that it cannot be measured in money, and that its sale would irreparably damage him, and that he has no adequate remedy at law. The averments of the complaint that the plaintiff would be irreparably damaged by the sale and that he has no adequate remedy at law are mere conclusions of law, and are not supported by the facts alleged. There is no intimation that Grant is not entirely able to pay to the plaintiff any damages which he may sustain by reason of the sale of the collateral if plaintiff shall finally succeed in establishing that Grant under his agreement has no right to make such sale.

The record shows that the participating rights are actually sold, and on the argument it was conceded that they have recently brought a higher premium than they commanded in 1902, when the negotiations between plaintiff and defendant were had. When the syndicate is wound up, it could be determined just what the right of the plaintiff to participate would realize, and then certainly there would be no difficulty in determining just what damage the plaintiff had sustained by any unauthorized sale of his participating right. This court has held in Butler v. Wright, 103 App. Div. 463, 93 N. Y. Supp. 113, and Clements v. Sherwood-Dunn (Sup.) 95 N. Y. Supp. 766, that the simple fact that a stock is not listed and sold, or offered for sale, so that a market value may be readily established, does not warrant the interposition of equity to decree specific performance where the value of the stock or right can be ascertained from other facts and the damage thus established. The principle laid down in those cases is applicable to the present one. The injunction order granted and which was continued by the order appealed from is based upon the theory that the plaintiff would be irreparably damaged by a sale of the collateral. The defendant being responsible and able to respond in any damage which the plaintiff may establish, if he shall be able to establish any, and the collateral having a value which can be ascertained by proof of the value of the properties embraced within the syndicate agreement, as well as the price at which the rights to participate have sold, there is no occasion for invoking equitable principles, or for restraining defendant from doing what he presumptively has the right to do, and the injunction should not have been granted.

On the facts appearing in the record before us it is very doubtful whether Morgenthau was the agent of Grant to such an extent as that he was bound by any agreement made by him with plaintiff; and also whether the note was made and delivered by the plaintiff under such conditions as permit him to prove any oral agreement concerning it. But, we having concluded that the injunction was improperly granted,

and its propriety being the only question before us, a consideration of these questions becomes unnecessary.

The order should be reversed, with $10 costs and disbursements, and the motion to continue the injunction denied, with $10 costs. All concur.

