(87 Misc. Rep. 229)

### BATTERSON v. RAYMOND et al.

(Supreme Court, Special Term, New York County. October 27, 1914.)

1. INJUNCTION (§ 136*)—PRELIMINARY INJUNCTION—SALE OF PLEDGED SECURITIES.

Where, in a suit by complainant against his brokers for an accounting. he alleged that he had pledged with them corporate stock in an insurance company of which he was a director and local manager, and also other stock in another corporation of which he was president, and that such stocks had a peculiar value to complainant, aside from their mar-

ket value, in that they represented the control of the corporations and the security of his position, that defendants had threatened to sell such securities for an alleged indebtedness of the owner, and that by repledging the securities and loaning them they had made secret profits, for which they had not accounted, and defendants, on an application for a preliminary injunction, did not deny the special value of the securities to complainant, nor show that they had not made such secret profits as alleged, complainant was entitled to an injunction against selling the stock pending the suit.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 305, 306; Dec. Dig. § 136.*]

2. BROKERS (§ 37*)—ACCOUNTING—BURDEN OF PROOF.
Where, in a suit against stockbrokers for an accounting, complainant charged that they had manipulated his account and securities for their own benefit, had acted in bad faith, and failed to execute his orders, the burden was on them to show that such orders had been faithfully executed, and to render a full and complete account of all their dealings on his behalf.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 31–36; Dec. Dig. § 37.*]

3. CORPORATIONS (§ 123*)—STOCK—PLEDGED SECURITIES—USE BY PLEDGEE.
Where securities were pledged with stockbrokers to secure complainant's account, the brokers had no right to use the securities in making loans from banks and other persons in amounts in excess of complainant's indebtedness, and thus secure a secret profit by obtaining rates of interest lower than the rates charged complainant; and this, whether the stock was hypothecated by the brokers on loans for money for the benefit of complainant's transactions, or for their own purposes..

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507–512, 537, 539–549, 569, 618; Dec. Dig. § 123.*]

4. BROKERS (§ 37*)—ACCOUNTING—VOLUNTARY PAYMENT—COMPOUND INTEREST.
That brokers charged complainant compound interest, and that he paid it voluntarily, did not estop him to object to an account on which interest was compounded, since such voluntary payment only raised a presumption of assent, which might be rebutted by circumstances showing the contrary.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 31–36; Dec. Dig. § 37.*]

5. BROKERS (§§ 19, 37*)—"FIDUCIARY RELATION"—ACCOUNTING.
The relation between a stockbroker and his client is fiduciary, and an action lies by the client against the broker for an accounting, wherein the burden is on the latter to show that their trust duties have been performed, and the manner of such performance..

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 16, 31–36; Dec. Dig. §§ 19, 37.*

For other definitions, see Words and Phrases, First and Second Series, Fiduciary Relation.]

6. INJUNCTION (§ 136*)—PRELIMINARY INJUNCTION—INCIDENTAL RELIEF.
Equity having jurisdiction of the subject-matter of a suit by a client against stockbrokers for an accounting, it might properly grant an injunction as incidental relief to preserve the status quo until the merits could be determined, without reference to whether complainant had an adequate remedy at law.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 305, 306; Dec. Dig. § 136.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. INJUNCTION (§ 136*) — PRELIMINARY INJUNCTION — COMPLAINT — INSOLVENCY.

Where complainant sued his stockbrokers for an accounting, his right to a temporary injunction restraining the sale of his securities pendente lite was not dependent on an allegation that the brokers were insolvent.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 305, 306; Dec. Dig. § 136.*]

8. EVIDENCE (§ 5*)—JUDICIAL NOTICE—CURRENT EVENTS.

In a suit against stockbrokers for an accounting and to restrain them from selling complainant's securities pendente lite, the court would take judicial notice of prevailing financial conditions, that by reason of the foreign war the Stock Exchange was closed, that there was no longer any market for securities, and that almost universal extension of credit was being given among business men, brokers, and bankers generally.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 4; Dec. Dig. § 5.*]

Suit by James Batterson against Harry Raymond and others, doing business as Raymond, Pinchon & Co., and the Travelers' Insurance Company. On motion for an injunction pendente lite. Granted.

William P. Maloney, of New York City, for plaintiff.

Hays, Hershfield & Wolf, of New York City, for defendants Raymond, Pinchon & Co.

William J. Moran, of New York City, for defendant Travelers' Ins. Co.

GAVEGAN, J. The action is for an accounting; plaintiff being a customer of the defendants Raymond, Pinchon & Co., who are stockbrokers. The motion is for an injunction, and is incidental to the relief sought in an accounting to restrain the defendants pendente lite from selling 200 shares of the capital stock of the Travelers' Insurance Company, 1,300 shares of the capital stock of the New England Granite Works, and 243 shares of the capital stock of the Mines Company of America. The stock of the Travelers' Insurance Company, which was founded by plaintiff's father, and of which plaintiff is a director and the local manager for the city of New York, and the stock of the New England Granite Works Company, of which plaintiff is president, are alleged by the plaintiff to have a peculiar value aside from their ostensible market value. The defendant Travelers' Insurance Company appears formally, and is not intended to be included in the term "defendants" as hereinafter used.

[1] The plaintiff in substance sets forth two causes of action. In the first he alleges that he has paid in to the defendants about $232,000, drawn out from time to time about $50,000, and deposited with them as collateral the 200 shares of Travelers' Insurance Company stock and the other securities mentioned. The value of the Travelers' Company stock is claimed to be $120,000, of the New England Granite Works stock $195,000, and of the Mines Company stock about $650. After setting forth some 2,100 shares of stock dealt in on the New York Stock Exchange, which the defendants say they are now carrying for the plaintiff, the complaint alleges that the defendants claim there is owing to them a balance of about $172,000. The account runs from

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

1905, and the plaintiff alleges that he has since then paid over to the defendants about $182,000 in excess of all amounts which he has drawn, and that he has deposited with them in addition the collateral aforesaid, of the value of $315,000. It also appears from the complaint that the plaintiff made profits of $100,000 in the account, notwithstanding which the defendants claim that, in transactions for the plaintiff amounting to 1,328,875 shares, he owes them the aforesaid balance of $172,000, against which they hold, not only said collateral, valued at $315,000, but also the Stock Exchange securities, worth about $40,000, which they are carrying for him, making a total of some $355,000 of collateral, which they have against their alleged claim of $172,000. The plaintiff further alleges that the defendants claim to have charged against the plaintiff $166,000 during the period of the account for alleged commissions and about $122,000 for interest compounded. Plaintiff then alleges that, although he disputes the amount of the indebtedness due the defendants and avers that they have not purchased the stocks in his account, but have only pretended to do so, they nevertheless are threatening to transfer or dispose of his collateral.

In his second cause of action plaintiff charges that while the defendants were his brokers, and he supposed they were acting honestly and for his sole benefit, they were in fact manipulating, operating in, and conducting his said account and using his moneys and collateral for their own benefit and profit, and were thereby making large and secret profits, in violation of the plaintiff's rights; that he requested an accounting of the defendants, which was not made; that he was given an opportunity to examine defendants' books, which he did, but was unable to ascertain the real state of his account therefrom, owing to the confused manner in which they were kept, and that in the meantime the defendants, without notice to the plaintiff and without his knowledge, endeavored to transfer to themselves the 200 shares of the Travelers' Insurance Company stock, for the purpose of disposing of the same for their own use and benefit; that the defendants have manipulated and operated said account for their own benefit, by inducing plaintiff to follow their suggestions and advice in the purchase and sale of certain stocks, and by causing him to buy and sell the same in great numbers, and by repeated changes of purchases and sales, which they purported to have had on his account, aggregating about 1,328,875 shares, all of which, as plaintiff claims, was done in bad faith, for the purpose of consuming plaintiff's money for their personal benefit and profit, and to enable them to make secret profits and compound interest; that they have made overcharges in interest, compound interest, and other items, amounting to $68,702; that for their own purposes they have taken plaintiff's securities and used them in banks and otherwise, obtaining loans thereon, exceeding the indebtedness of the plaintiff to them, at certain rates of interest which would have been beneficial to the plaintiff, and instead of giving him the benefit of such rates they charged the plaintiff greater rates over and above their proper commissions and interest; and that they loaned said securities out to other persons at a profit to themselves without the knowledge of the plaintiff. Similar acts of the defendants, where the plaintiff had sold

stock short in the market, are alleged, together with discriminations against the plaintiff in the matter of interest charges, although they had agreed with him, in order to induce him to open accounts with them, that they would grant him a special privilege in the way of interest at as low a rate as the lowest rate given to or obtained for any customer upon their books. The plaintiff then charges the defendants with making their claim on him for $174,000, and threatening to dispose of his said collateral, and demanding further payments for the purpose of depriving him of the same for their own benefit; that the defendants did not give plaintiff the benefit of their best skill, advice, and experience as brokers, to which he was entitled, and upon which he relied, but, on the contrary, manipulated the account and conducted same for their own profit and benefit; and he then sets forth alleged instances in detail of defendants' manipulations and false representations to induce the plaintiff to purchase and sell large quantities of stocks, in order to obtain large commissions and interest charges thereon, for their own benefit and profit and in bad faith. The plaintiff then prays for an accounting and for other relief.

The defendants' answer consists of denials and allegations of special usages and customs and accounts stated, but admits that they acted as plaintiff's brokers and fiduciaries. In the moving papers, in addition to the complaint, the plaintiff charges specific acts of the defendants in furtherance of the allegations contained in the complaint. The defendants in turn in their affidavits contradict the plaintiff in most respects, and reiterate in greater detail the matters of special usages and customs and accounts stated, already set forth in their answer. I find, · however, no contradiction of the plaintiff's affidavits as to the unique and peculiar value to him of the securities in question, nor as to the defendants' secret profit.

[2] Although the defendant Pinchon, who is the only one of the defendants making any affidavit, denies that the defendants have ever threatened to sell and dispose of the plaintiff's collateral, I am satisfied by a preponderance of evidence that the defendants have not only contemplated, but have taken certain preliminary steps looking, to, the sale of said collateral securities; nor do I find, although the burden is upon the defendants to supply it, any evidence of the execution of plaintiff's orders by them, beyond their general statement that they have executed said orders. The fact that the defendants have rendered statements which they called accounts does not deprive the plaintiff of his right to a full and complete account of all the defendants' dealings on his behalf.

[3] The alleged usages and customs pleaded by the defendants in their answer do not meet plaintiff's charges that they have used his collateral securities in making loans with banks and other persons, pledging them for amounts in excess of the amounts due from plaintiff and making secret profits therefrom by obtaining certain rates of interest on these loans from the bank, but concealing the fact from the plaintiff and charging the plaintiff a different rate of interest (Douglas v. Carpenter, 17 App. Div. 329, 45 N. Y. Supp. 219); it being immaterial whether the stock was hypothecated by the defendants on

the loan of money for the benefit of plaintiff's transactions or for their own purposes (Lawrence v. Maxwell, 53 N. Y. 23). Defendants, moreover, in their answer seem to entirely lose sight of the rule which places the burden upon a trustee to show that he has made no secret profits.

[4] The attempt of the defendants to justify their admitted compounding of interest on the ground that the plaintiff paid it voluntarily does not dispose of that issue, since the failure of the debtor to object to an account on which interest is compounded does not necessarily bind him, but raises only a presumption of assent, which may be rebutted by circumstances tending to a contrary inference.

[5] The relation between plaintiff and defendants is fiduciary, and an action lies for an accounting, wherein the burden is upon the defendants to show that their trust duties have been performed and the manner of their performance. Haight v. Haight & Freese Co., 46 Misc. Rep. 501, 92 N. Y. Supp. 934, affirmed 112 App. Div. 475, 98 N. Y. Supp. 471, and 190 N. Y. 540, 83 N. E. 1126.

[6] The court, having acquired jurisdiction upon equitable grounds, will take cognizance of the whole matter involved, and should grant the injunction prayed for as incidental relief to preserve the plaintiff's status quo until the merits of the action can be determined, if he has no adequate remedy at law, if the collateral securities in question are of unique and peculiar value to him, if the threatened sale would amount to the exercise of an unconscionable advantage over the plaintiff by the defendants, and if the relative hardship resulting to the plaintiff from the present sale of said collateral would be greater than the hardship imposed upon the defendants by reason of delay in such sale, until the true state of the account between the parties can be determined at the trial.

As to the defendants' contention that the plaintiff had an adequate remedy at law, since he can sue for damages if the defendants sell his stock deposited as collateral security, the answer fails to plead, nor am I satisfied from the affidavits filed, that plaintiff has such remedy at law. Ostrander v. Weber, 114 N. Y. 95, 21 N. E. 112; Lough v. Outerbridge, 143 N. Y. 271, 38 N. E. 292, 25 L. R. A. 674, 42 Am. St. Rep. 712. Furthermore, I am of the opinion that this is a case in which the question whether the remedy at law is adequate cannot arise, for the reason that there is no remedy at law. The plaintiff merely seeks to ascertain the true condition of his account, has prayed for general relief, and asks for injunctive relief as incidental thereto, and the court should give such incidental relief where the action is for an accounting against one in a relation of trust, even though it does not appear that there is anything due the plaintiff, since he is entitled to know in such a proceeding whether anything is due. Frethey v. Durant, 24 App. Div. 58, 48 N. Y. Supp. 839; Pomeroy's Equity Jurisprudence (3d Ed.) vol. 4, §§ 1339, 1340.

[7] The rule invoked by the defendants, that the plaintiff must show that the defendants are insolvent, has no application to this case, where the relief sought is peculiarly equitable; and the case of Howley v. Francis Press, 127 App. Div. 646, 111 N. Y. Supp. 1080, cited by the defendants, is therefore not in point. I do not consider the case of

Ehrich v. Grant, 111 App. Div. 196, 97 N. Y. Supp. 600, analogous, since the plaintiff therein conceded that he owed the defendant the amount represented by his promissory note. Moreover, the decision therein was based upon the decision of Butler v. Wright, 103 App. Div. 463, 93 N. Y. Supp. 113, which was reversed in the Court of Appeals, 186 N. Y. 259, 78 N. E. 1002. Nor has the case of Knickerbocker v. Gould, 115 N. Y. 533, 22 N. E. 573, cited by the defendants, any application, in my opinion. There the action was at law on an account stated, where the defendant made no claim that the plaintiffs executed the orders, or that the accounts were not correct, but merely asserted that he did not consider himself responsible for the account after the margin was used up, and that when he put up margin he understood that if he did not make up his mind he wanted to continue he would be sold out, and he did not even show that this was according to his contract with the plaintiff. The Court of Appeals properly held in that case that, as he had repeatedly received notice of the account and had acquiesced in it, there was an account stated. It was held in the case of Haight v. Haight & Freese, supra, that mere accounts rendered from time to time by trustees to the cestui que trust do not constitute an account stated.

The case of Mayer v. Monzo, 151 App. Div. 866, 137 N. Y. Supp. 616, which was an action at law, does not appear to me to be in point, since the case at bar is an action in equity in which the plaintiff is not relying merely upon a claim of conversion, but upon the secret profits which the defendants are alleged to have made, and the rule of evidence applicable here places the burden upon the defendants to show all the facts. It does not appear that the defendants require the plaintiff to take up his account, but their position seems to be that he should advance them more money, for they assert in their answer that they have asked him for additional margin.

In view of the allegation in the complaint that the defendants agreed to carry plaintiff's purchases and sales and his account upon collateral securities claimed by the plaintiff to be still ample, which arrangement they appear to have carried out for a period of several years, I think the plaintiff may well question the defendants' demand for money, when that demand is accompanied by an intimation that his securities will be sold out at a time when the Stock Exchange is closed. At the time when the plaintiff pledged his securities with the defendants as collateral, there was a mart in this city open for the purchase and sale of stocks and bonds. Since the closing of the New York Stock Exchange there has been no such mart, and there may not be for a long time to come. An unprecedented situation has therefore arisen, which was not within the contemplation of the parties when they entered into the fiduciary relationship of customer and stockholder, a situation which, in my opinion, justifies a court of equity in stretching out its arm to protect a pledgor of securities in circumstances such as are disclosed by the moving papers before me. In this situation the defendants, who under the law are the plaintiff's trustees, have in effect, by virtue of the rules of the Stock Exchange, the advantage of a moral moratorium, though not a legal one, over the plaintiff, who is their

cestui que trust, and disputes that he owes them anything, for they insist upon the plaintiff's allowing them to sell out without notice securities which it is undisputed are of unique and peculiar value to him, while, on the other hand, Stock Exchange securities which they are carrying in his account no longer have any market, the Stock Exchange being closed.

[8] Unless this court, taking judicial notice of prevailing financial conditions at a time when almost universal extension of credit is being given to one another by business men, brokers, and bankers generally, and even governments (Germania Life Ins. Co. v. Potter, 124 App. Div. 814, 109 N. Y. Supp. 435), can restrain a trustee from exercising such an advantage over his cestui que trust until the true state of their financial relationship is disclosed by an accounting, an irreparable wrong may be done to the plaintiff. If it should be determined on the accounting that there was nothing whatever due to the defendants from the plaintiff, it certainly would be inequitable in the meantime to have permitted the plaintiff's peculiarly valuable securities to be sold, leaving the plaintiff to reply upon the assumed responsibility of the defendants at some subsequent and precarious time. The danger of possible legislation adverse to the interests of insurance companies generally, which the defendants refer to as bearing upon the future value of the plaintiff's collateral in case they are restrained from selling it at this time, would seem to be at least as remote as the danger with which the present financial crisis is fraught in its bearing on the future financial responsibility of the defendant stockbrokers. I am of the opinion, therefore, that until it is determined whether the plaintiff owes the defendants anything, these valuable securities, which he claims involve his corporate control and jeopardize the official positions, with their emoluments, which he holds by virtue of such control, should not be sold.

The motion will be granted upon the furnishing of a proper bond, the amount of which will be determined upon the settlement of the order, to cover counsel fees or damages which the defendants may suffer by reason of the injunction. Settle order on notice.