## In re B. & R. GLOVE CORPORATION.

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

### No. 51.

1. **Bankruptcy ⊜440—Appeal and petition to revise are mutually exclusive.**
    In bankruptcy proceedings, the remedies by appeal and by petition to revise are mutually exclusive.

2. **Bankruptcy ⊜440—Both appeal and petition to revise same order may be filed.**
    In bankruptcy proceedings, a party may file both an appeal and a petition to revise relating to the same subject-matter, and have the matter determined on the merits, in whichever proceeding the court may decide to be appropriate.

3. **Bankruptcy ⊜440—Petition by third party reclaiming property presents "controversy in bankruptcy," reviewable by appeal.**
    A proceeding by a creditor of the bankrupt to reclaim property in the hands of the receiver presents a controversy arising in bankruptcy proceedings, and the proper remedy for review is appeal, under Bankruptcy Act, § 24a, and not a petition to revise, under section 24b (Comp. St. § 9608).
    [Ed. Note.—For other definitions, see Words and Phrases, Second Series, Controversy Arising in Bankruptcy Proceedings.]

4. **Bankruptcy ⊜446—Questions of law only reviewable on petition to revise.**
    On petition to revise in bankruptcy proceedings, the court can review questions of law only.

5. **Bankruptcy ⊜467—Law and facts reviewable on appeal.**
    In the case of appeals, the court can review both law and facts.

⊜For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes

**6. Bankruptcy ⬅️467—Whether creditor relied on previous statement of bankrupt is reviewable question of fact.**

The question whether a party, who sold goods to the bankrupt on credit shortly before bankruptcy, relied on a statement given seven months before by the bankrupt as to its financial condition, is a question of fact, the determination of which is reviewable on appeal.

**7. Bankruptcy ⬅️212—Creditor held not to have relied on previous statement of bankrupt.**

Testimony that the creditor, seeking to reclaim property sold on credit shortly before bankruptcy of the buyer, solicited the order from the bankrupt and extended credit after the bankrupt stated he had accounts receivable sufficient to pay all obligations, without reference to a statement as to financial condition made by the bankrupt seven months before, *held* to show that the creditor did not rely on the previous financial statement in making the sale in controversy.

**8. Sales ⬅️46—Continuing statement can be relied on only for a reasonable time.**

Even though a statement as to financial condition made by the buyer is a continuing statement, in that the buyer therein agreed to notify the seller of any change in its financial condition, the statement is one which can be relied on only for a reasonable time, unless it is otherwise expressly provided.

**9. Trial ⬅️136(1)—What is reasonable time is question of law, when facts are undisputed.**

The question of what is a reasonable time within which an act can be done is a question of law for the court, where the facts are admitted or clearly proved.

**10. Sales ⬅️46—Financial statement of condition in March, 1920, cannot be relied on in December following.**

In view of the general business conditions prevailing at the time, a seller could not reasonably rely on a financial statement of the buyer's condition as of March, 1920, made in June of that year, in selling goods to the buyer in December, 1920.

**11. Evidence ⬅️11—Court can take judicial knowledge of financial depression of 1920.**

The court can take judicial knowledge of the financial depression which prevailed throughout the country in December, 1920.

**12. Sales ⬅️45—Undisclosed insolvency is not concealment avoiding the sale.**

The fact that the buyer knew it was insolvent at the time it bought the goods on credit, and did not disclose such insolvency to the seller, is not, in the absence of an attempt to defraud, such a concealment as will avoid the sale under the law of New York.

Petition to Revise Order of, and· Appeal from, the District Court of the United States for the Southern District of New York.

In the matter of the B. & R. Glove Corporation, bankrupt. From an order allowing reclamation claim of Garo Keshishian & Co., Inc., Julian A. Gregory, as receiver in bankruptcy, appeals and files petition to revise. Petition to revise dismissed, and order reversed on the appeal.

This cause comes here on a petition to revise an order of the United States District Court for the Southern District of New York and also upon an appeal from the said order. The bankrupt is a corporation organized under the laws of the state of New York and on December 31, 1920, when an involuntary petition in bankruptcy was filed against it, was engaged in the business of manufacturing gloves in the city of New York. The reclaiming creditor is a business corporation organized under the laws of the state of New York, and is doing business in the city of New York, dealing in glove leather.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The reclaiming creditor claims that the bankrupt corporation on December 10, 1920, and also on December 16, 1920, by means of false and fraudulent representation, and also by means of false statement of financial condition obtained merchandise, namely, glove leather of various types, and that the representations made by the bankrupt on that financial statement, which he gave to the claimant, was false, and was known to the bankrupt and its various officers to be false at the time it was given, and that at the time of the purchase the bankrupt corporation concealed from claimant its true financial condition. It is admitted that some of the merchandise so sold to the bankrupt subsequently came into the hands of the receiver, and was in his hands at the time this proceeding was instituted being on the premises of the bankrupt when the receiver took possession.

Cohen, Gutman & Richter, of New York City (Theodore B. Richter and Samuel Conrad Cohen, both of New York City, of counsel), for appellant.

George S. Kebabian, of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The order involved was entered in the District Court on April 13, 1921, in a reclamation proceeding instituted by Garo Keshishian & Co., Inc., to recover from the receiver of the alleged bankrupt certain property which had come into his possession as such receiver. The order adjudged and decreed that the receiver turn over to the reclaiming petitioner certain property which was the subject of the reclamation proceeding. The receiver, feeling himself aggrieved by such order and being in doubt whether the order ought properly to be reviewed by appeal or by petition to revise, appealed to this court and likewise filed in this court a petition to revise. As both the appeal and the petition to revise involved the same identical questions and were based upon the same record, the attorneys for the receiver entered into a stipulation with the attorneys for the reclaiming petitioner, by which it was agreed that the proceedings arising upon the appeal and those arising upon the petition to revise should be consolidated and heard on one record. That stipulation was presented to one of the judges of this court, who signed an order directing the clerk of this court to combine the records upon the appeal and petition into one record and so certify the same to this court.

[1] Before proceeding further in the consideration of this matter, it is advisable to state the limits of the jurisdiction of the court in cases brought here in this way. It is to be observed that, while there is authority for holding that the remedies by petition to revise and by appeal are cumulative, and that the one is not exclusive of the other, it is now the generally accepted opinion that this is not the law, and that the remedies are mutually exclusive. Globe Bank v. Martin, 236 U. S. 288, 295, 35 Sup. Ct. 377, 59 L. Ed. 583; Matter of Loving, 224 U. S. 183, 187, 32 Sup. Ct. 446, 56 L. Ed. 725; Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; In re Craig Lumber Co. (C. C. A.) 266 Fed. 692; Youtsey v. Nizwonger, 258 Fed. 16, 18, 169 C. C. A. 154; In re Engine Co., 249 Fed. 633, 161 C. C. A. 543; Henkin v. Fousek, 246 Fed. 285, 159 C. C. A. 15; In re Jacobs, 241 Fed. 620, 154 C. C. A. 378; In re Lumber Co., 240 Fed. 8, 153 C. C. A.

44; Wuerpel v. Commercial Germania, etc., Bank, 238 Fed. 269, 151 C. C. A. 285; Courtney v. Shea, 225 Fed. 358, 140 C. C. A. 382; Pindel v. Holgate, 221 Fed. 342, 137 C. C. A. 158, Ann. Cas. 1916C, 983; Bothwell v. Fitzgerald, 219 Fed. 408, 413, 135 C. C. A. 212; Salsburg v. Blackford, 204 Fed. 438, 12 C. C. A. 624; Kirsner v. Taliaferro, 202 Fed. 51, 120 C. C. A. 305; In re Martin, 201 Fed. 31, 37, 119 C. C. A. 363; Barnes v. Pampel, 192 Fed. 525, 113 C. C. A. 81; Brady v. Bernard & Kittinger, 170 Fed. 576, 580, 95 C. C. A. 656; O'Dell v. Boyden, 150 Fed. 731, 80 C. C. A. 397, 10 Ann. Cas. 239; In re McMahon, 147 Fed. 684, 77 C. C. A. 668; Davidson v. Friedman, 140 Fed. 853, 72 C. C. A. 553; Dickas v. Barnes, 140 Fed. 849, 72 C. C. A. 261, 5 L. R. A. (N. S.) 654. And such is the rule in this circuit. Feder v. Goetz (C. C. A.) 264 Fed. 619, 620; In re Rose Shoe Mfg. Co., 168 Fed. 39, 40, 93 C. C. A. 461.

[2] But the fact that an appeal and a petition to revise are both filed, both relating to the same subject-matter, would not defeat the right to have the matter determined on the merits in whichever proceeding the court might decide to be appropriate. Fisher v. Cushman, 103 Fed. 860, 43 C. C. A. 381, 51 L. R. A. 292. We will dismiss in such a case the remedy improperly taken and decide the case upon the other. Hendricks v. Webster, 159 Fed. 927, 87 C. C. A. 107. As the remedies are exclusive, it is necessary to consider which of them is appropriate to the cause presented, and which we are authorized to entertain.

[3] This is a proceeding by a creditor of the bankrupt to reclaim property in the hands of the receiver, and this court in the case of In re Toole, 270 Fed. 195, held that a reclamation by a third party of his own property in the hands of a trustee is a controversy arising in bankruptcy proceedings, and the proper remedy is appeal under section 24a, and not a petition to revise under section 24b of the Bankruptcy Act (Comp. St. § 9608). And as the remedies are exclusive we must dismiss the petition to revise and hear the matter on the appeal.

[4, 5] The court, on petition to revise, cannot review questions of fact, but only questions of law. See In the Matter of Nagel, 278 Fed. 105, decided by this court; Feder v. Goetz, supra; In re De Ran, 260 Fed. 732, 171 C. C. A. 470; In re Bolognesi, 254 Fed. 770, 166 C. C. A. 216; Bassett v. Evans, 253 Fed. 532, 165 C. C. A. 202; In re Shelly, 242 Fed. 251, 155 C. C. A. 91. But in the case of appeals the whole case is brought up, both law and facts. In re Rouse, Hazard & Co., 91 Fed. 96, 33 C. C. A. 356; In re Richards, 96 Fed. 935, 37 C. C. A. 634.

It appears that on June 2, 1920, the alleged bankrupt delivered to the claimant a statement of its financial condition as of March 10, 1920. Upon the strength of the condition shown on that statement the claimant sold to the alleged bankrupt on credit certain merchandise which was subsequently paid for. There were no further transactions between the parties until the transaction herein involved. In the month of December, 1920, the salesman of the claimant called upon the alleged bankrupt and endeavored to sell it some merchandise. At that time, according to the testimony of the claimant's salesman, the following took place:

He took samples of glove leather to the bankrupt at its place of business, and met its president, and tried to make a sale. The president inquired the prices, and the salesman informed him. The president said the prices were too high, but finally they came to an agreement about the prices, and then the salesman said he wanted a cash payment. The president informed him that the company could not pay cash, as it had none at the time, but that they would collect quite a little to pay up all the bills by the first of the year, and he proposed a trade acceptance for 30 days. The salesman told him that he would speak to Mr. Keshishian about it; the latter being the treasurer of the claimant corporation to which the salesman belonged. On his cross-examination the following took place:

"Q. You didn't see any financial statement at that time, did you? A. No.

"Q. You asked him for cash, and when he refused to give cash, you simply took his word to the effect that he had outstanding bills sufficient to meet his obligations? A. Yes; that is what he told me at the time.

"Q. And that is all you had to do with it at the time? A. Well, I spoke to Mr. Keshishian."

The president of the bankrupt then saw Mr. Keshishian himself, and a sale on credit was agreed to; one sale being made on December 10th, and another on December 16th. The bankrupt stated through its president at that time that it wished to make two payments, one half on January 25th, and the other half on February 25th, and this was assented to by Mr. Keshishian. The latter stated that, in the interview regarding these two credit sales in December, no reference was made by either of them to the financial statement of June 2d. He was asked by the commissioner as follows:

"Q. Did you allude to the statement in December? A. No; I did not.

"Q. Did he say anything about the statement in December? A. No; he did not.

"Q. Did you ask him anything about his present condition? A. Without my asking, when he said that he was so busy, and I had the information already that he had many accounts collectible with which he could pay all his debts early in January, those things gave me satisfaction, gave me confidence.

"Q. Well, give me the whole of the conversation that you had in December with this officer of the company? A. The conversation with him was to the effect that he had many orders, that he was very busy, and that he was going to ship out much goods before the end of the year, whereas his competitors were not so busy; that was all that he spoke to me."

He also testified as follows:

"Q. On what did you rely in making that sale on December 16, 1920, and giving the credit to the bankrupt corporation? A. Again his financial statement of June 2d and his verbal statement to the effect that he had enough accounts collectible to pay all his debts on the 1st of January or in the middle of January."

On his cross-examination he testified as follows:

"Q. Your statement, which you received, was given to you in the month of June? A. Yes.

"Q. And at the time the bankrupt purchased this merchandise from you, did Mr. Rosenberg as president refer to the statement of June 2d? A. No.

"Q. You didn't ask him about the statement either, did you? A. No.

"Q. And you accepted his trade acceptance for the merchandise? A. Yes, sir.

"Q. And you extended credit to him on that basis? A. Exactly."

The written financial statement which the bankrupt corporation delivered to the reclaiming creditor on June 2, 1920, was on a form for delivery to the Irving National Bank, and had a provision to the effect that "the undersigned also expressly agrees to notify Irving National Bank of any material reduction of financial responsibility of the undersigned." It stated therein that according to the last audit made on March 10, 1920, there was a surplus of assets over liabilities of $14,000. There is evidence tending to show that the alleged bankrupt's liabilities were understated in the sum of $3,200; hence the statement was untrue to that extent. The evidence also tends to establish the fact that, at the time of the purchases made in December, the alleged bankrupt was in fact insolvent. The principal officer and manager denied actual knowledge on his part of such insolvency. There is no proof that the alleged bankrupt ever notified the reclaiming creditor of any material reduction of its financial responsibility according to its promise in the statement on the Irving National Bank form delivered on June 2d.

The special commissioner, to whom the application of the reclaiming petitioner was referred, came to the conclusion that the right to reclaim had not been established and so reported. In his report he says:

"In December, at the time of the alleged sales, the statement of June 2d was not mentioned by either party. There was a general inquiry made by the petitioners as t⌐ how the alleged bankrupt was getting on, and the alleged bankrupt answered that it was doing some business, a lot more than its competitors; that it could not pay cash which was asked for by petitioners, but that it expected to get in collections for goods sold that would enable it in January and February to pay for the goods bought. Between June, when the written statement was delivered by the alleged bankrupt, to the time of the sales in December, a period of six months had elapsed. It is a well-known fact that merchandise generally declined greatly in value between early in June, 1920, and December, 1920. Under the circumstances, I think the petitioners were not justified in relying upon this statement without calling the attention of the alleged bankrupt to it, and making inquiries calculated to disclose the changes in the financial condition of the alleged bankrupt. While these statements are held to be continuing statements, it is also true that they do not continue forever, and that the reasonable time of their continuance depends upon the circumstances in any given case.

"The further question is: Were the circumstances such as to require the alleged bankrupt, in the absence of any inquiries on the part of the petitioners, to disclose fully its financial condition. The evidence shows that the petitioners solicited these orders from the alleged bankrupt. There is no evidence to show whether or not the alleged bankrupt in fact notified the Irving National Bank of any material reduction of financial responsibility. Assuming that this provision in the statement amounted to an agreement on the part of the alleged bankrupt to notify the petitioners of such material reduction of financial responsibility, in my judgment the proper construction of that provision would be this: That thereby the alleged bankrupt agreed, in case it asked for the credit, that it would notify the petitioners of any change in its financial condition. The facts indicate that the alleged bankrupt did not ask or solicit this credit, but that the petitioners asked the alleged bankrupt to buy the goods in question."

The reclaiming creditor thereupon gave notice of a motion to set aside the above report; and the matter coming on to be heard before the District Judge he dissapproved the conclusion of the special master and set it aside; and an order was entered on April 13, 1921, which

adjudged and decreed that the reclaiming creditor recover of the receiver so much of the property described in the petition as actually came into his possession.

The District Judge in his opinion declared that the record seemed to him to establish clearly that the reclaiming creditor relied in December on the statement of June 2d, and had the right so to rely. He said that the testimony of the treasurer of the reclaiming creditor that he relied upon the statement of June 2, 1920, was "reasonable and credible."

[6] The question whether the creditor relied on the financial statement of June 2d, is a question of fact, which, upon the appeal, this court is entitled to consider and determine.

[7] In view of the fact that the financial statement of June 2d was not mentioned by either the reclaimant creditor or the bankrupt at either interview in December, and the fact that it was the creditor who sought the bankrupt and proposed the sales then made, and that the creditor made additional inquiries of the bankrupt as to the business it was then doing, which showed, we think, that it was not relying on the statement of June 2d, we are unable to agree that reliance was placed upon it.

There is another consideration which, in this connection, should be mentioned. If we are mistaken in thinking that the claimant did not rely upon the statement of June 2d, and as a matter of fact it did rely upon it, as testified to by the treasurer of the claimant corporation, we should nevertheless be compelled to hold that it had no right under all the circumstances to rely upon it. In reaching that conclusion we have considered the nature of a financial statement and of the statement herein involved.

Written financial statements are divided into two classes. In the first class belong statements in which the only representation involved is that the statement of financial condition was true as of the date of which it purports to speak. In the second class belong statements in which two representations are made; first, that the statement was true as of its date; and, second, that the statement may be relied upon to be a true statement of financial condition at the dates in the future when further credits are extended. In statements of the first class there is no express agreement to furnish supplementary statements in the future to keep the creditor advised on any changes in financial responsibility since the date of the original statement. In statements of the second class there is such an express agreement. The statement in the case at bar belongs to the second class of financial statements, in which the debtor, not only warranted the truth of its statement of financial condition as of the date of the statement, but also expressly agreed to notify the creditor of any change of financial responsibility in the future.

The financial statement herein involved was on a printed form of the Irving National Bank, and was made and delivered directly to the claimant, and not to the bank, for the purpose of inducing the claimant to extend commercial credit to the bankrupt. The special commissioner and the District Judge both held that, whenever "Irving

Bank" was printed, the claimant was intended, and it is not argued that in this holding any error was committed, and we assume that none was. The statement contained the following provision:

"The undersigned also expressly agrees to notify Irving National Bank of any material reduction of financial responsibility of the undersigned."

Counsel for the receiver, in his argument in this court, stated that the question whether the parties intended the statement of June 2d to be a continuing statement is purely a question of fact and proceeded to argue that the circumstances connected with the transaction made it clear that the idea of a continuing statement never suggested itself until the present opportunity was found for its use. But whether the question be one of fact or of law is quite immaterial as this is before us on an appeal.

[8] The rule is that a financial statement made as a basis for general credit is a continuing statement, but one which can be relied upon only for a reasonable time, unless it is otherwise expressly provided. See Atlas Shoe Co. v. Bechard, 102 Me. 197, 201, 66 Atl. 390, 10 L. R. A. (N. S.) 245. In Bouvier's Law Dictionary it is said:

"The English law, which in this respect has been adopted by us, frequently requires things to be done within a reasonable time; but what a reasonable time is, it does not define; 'quam longum debet esse rationabile tempus non definitur in lege, sed pendet ex discretione justiciariorum.' Co. Litt. 50."

[9] The question of what is a reasonable time within which an act can be done is generally a question of law for the court. See Morse v. Bellows, 7 N. H. 549, 28 Am. Dec. 372; Hill v. Hobart, 16 Me. 164, 168; Mizell v. Burnett, 49 N. C. 249, 252, 69 Am. Dec. 744; McCurdy v. Rogers, 21 Wis. 197, 201, 91 Am. Dec. 468; Moxley's Adm'rs v. Moxley, 2 Metc. (Ky.) 309, 311; Kempner v. Cohn, 47 Ark. 519, 1 S. W. 869, 58 Am. Rep. 775; Little Rock & Ft. S. Ry. v. Atkins, 46 Ark. 423; Wingate v. King, 23 Me. 35, 37; Hickman v. Shimp, 109 Pa. 16, 20; Goltra v. Penland, 45 Or. 254, 77 Pac. 129; Yates v. Goodwin, 96 Me. 90, 51 Atl. 804; Colfax County v. Butler County, 83 Neb. 803, 120 N. W. 444; McFadden v. Henderson, 128 Ala. 221, 29 South. 640; Campbell v. Whoriskey, 170 Mass. 63, 48 N. E. 1070; Link v. City of Houston, 94 Tex. 378, 59 S. W. 566, 60 S. W. 664.

It sometimes, of course, is a question of fact for a jury. Fulton v. Blake, 5 Biss. 371, 9 Fed. Cas. 993, No. 5,153; Helliwell v. Grand Trunk Ry. Co. (C. C.) 7 Fed. 68, 73; Miller v. Hartford Fire Insurance Co., 70 Iowa, 704, 29 N. W. 411; Earle v. Earle, 16 N. J. Law 273, 285. But, where the facts are admitted or clearly proved, we understand that what is a reasonable time is a question for the court, and is to be decided according to the circumstances of the case. And see Empire Transportation Co. v. Philadelphia & Reading Coal & Iron Co., 77 Fed. 919, 924, 23 C. C. A. 564, 35 L. R. A. 623; Salmon v. Helena Box Co., 147 Fed. 408, 410, 77 C. C. A. 586; Smith v. Pelton Water Wheel Co., 151 Cal. 394, 90 Pac. 934. This court recently had before it the meaning of the phrase "reasonable time," and we held in First National Bank of Litchfield v. Pipe & Contractors' Supply Co. (C. C. A.) 273 Fed. 105, 108, that "where the facts are clearly estab-

lished, or are undisputed, or admitted, the reasonable time is a question of law." In Paine v. Central Vermont Railroad Co., 118 U. S. 152, 160, 6 Sup. Ct. 1019, 30 L. Ed. 193, the court held that a promissory note payable on demand is overdue unless transferred within a reasonable time after its date, and that what is a reasonable time is a question of law, depending upon all the circumstances of the particular case.

A financial statement, made for obtaining credit, is like a promissory note payable on demand, in that it is intended to be a continuing security, and, as in the case of the note the demand must be made in a reasonable time, in like manner reliance on the financial statement does not extend beyond a reasonable time, and what constituted such time is as much a question of law in the one case as in the other.

[10, 11] Without deciding whether a statement showing the financial condition of the debtor in March, 1920, and delivered in June, can be regarded in ordinary times as in full force and effect in December, 1920, we do not think it was entitled to be so regarded under the conditions which then prevailed in the United States. The court can take judicial notice of the financial depression which then prevailed throughout this country. Indeed, we all know that at that time there was world-wide financial depression, which was the subject of national and international conference. As to the right of the court to take judicial notice of the financial depression which existed, see Germania Life Insurance Co. v. Potter, 124 App. Div. 814, 109 N. Y. Supp. 435; Batterson v. Raymond, 87 Misc. Rep. 229, 238, 149 N. Y. Supp. 706; Wentworth v. McDonald, 78 Wash. 546, 139 Pac. 503; Louisville, etc., R. Co. v. Holland, 173 Ala. 675, 55 South. 1001. In view of the general financial depression which prevailed, the claimant was not reasonably entitled to rely in December on a financial statement made nine, or even six, months previously, and not mentioned by either party at the time of the transactions involved.

As respects that part of the financial statement in which it was agreed that the debtor would notify the creditor of any material reduction of the latter's financial responsibility, it is not to be understood as imposing an obligation unlimited in time, but only during such a reasonable time as the financial statement itself could be relied upon. This case differs materially from that of the Atlas Shoe Co. v. Bechard, supra, upon which the claimant strongly relies. In that case the agreement expressly provided that it might be considered as a continuing statement, "and a new and original statement of our assets and liabilities upon each and every purchase of goods from them [it] hereafter until we advise them in writing to the contrary." The court said:

"This is something more than a representation true at the time and a mere failure to notify of a change of conditions. Such a representation may be relied upon only for a reasonable time. It is here expressly agreed that it may be considered a continuing statement, and a new and original statement upon each and every purchase of goods. That can mean nothing less than that it is to have the same force and effect 'as a basis for credit' that it would have if it accompanied each order of goods and was made as of the date of said order. The intention of the parties is apparent and unmistakable that the plaintiff might rely upon it the same when the last as when the first goods were sold."

In the instant case the agreement was simply to notify of any material reduction of financial responsibility, which we construe to refer to the period of "reasonable time" within which the statement itself continued in force.

[12] There is no evidence that in December the bankrupt represented itself as solvent. There is some evidence tending to show that at the time the merchandise was sold the bankrupt was insolvent. But that fact alone, even if the bankrupt then knew that it was insolvent, and it denies that it had any such knowledge, would not entitle the reclaiming creditor to repudiate the sale. It is well-established law in the state of New York that mere omission of the purchaser on credit to disclose his insolvency to the seller, in absence of an attempt to defraud, is not such a concealment as will avoid the sale. Nichols v. Pinner, 18 N. Y. 295; People's Bank v. Bogart, 81 N. Y. 101, 108, 37 Am. Rep. 481; Morris v. Talcott, 96 N. Y. 107; Hotchkin v. Third National Bank, 127 N. Y. 329, 344, 27 N. E. 1050. These cases show that, to avoid a sale under such circumstances, it must also appear that the purchaser at the time of the sale had the intent to obtain the goods without paying for them. And that such must have been his intent has been held by this court in Hyman v. Trow Directory Co. (C. C. A.) 261 Fed. 991.

In Re Weil, 111 Fed. 897, a financial statement was made in March to a mercantile agency, and credit was given upon it in July and August. It was held by the District Judge that the creditor had a right to rely thereon and could reclaim the goods. In the case of In re J. S. Patterson & Co. (D. C.) 125 Fed. 562, it was claimed that creditors should not have relied on a financial statement made in February as a basis of credit for goods ordered in May to be shipped in September. In that case the District Judge said that—

"Such statements are made the basis of continuing credit, and it is not necessary that they should be made exactly at the time of sale. Such a requirement would be unreasonable."

That is certainly true as respects the statement involved, in which a financial statement provided expressly that it should stand as to all subsequent purchases, "unless at the time of such subsequent purchase or purchases we shall notify them of any change in our assets or liabilities, and hereby bind ourselves to give such notice in case of any material change in our pecuniary condition; otherwise, all subsequent purchases to be made on the faith of the above statement." The case is not unlike the Atlas Case. We may observe that in the Patterson Case it is said that—

"The length of time that has elapsed since making the statement, within reasonable limits, is for the consideration of the court in passing upon the extent that the sale was actually influenced thereby."

In Re Braverman (D. C.) 199 Fed. 863, credit was given based on a financial statement issued 18 months prior thereto. The bankrupt had failed to fill in the blank showing how long the statement might be regarded as continuing. The discharge of the bankrupt was opposed on the ground that credit had been obtained by a false statement. The

District Judge confirmed the report of the master recommending the discharge. The judge asks:

"Does that give the seller any right, 18 months thereafter, to assume that the condition remains approximately as then stated?"

He answers his own question by saying, "Certainly not." He says:

"It is unreasonable to suppose that such a statement would be any index of his financial condition 18 months after it was made. If the seller relied on it, he had no right to do so."

In Haimowich v. Mandel, 243 Fed. 338, 342, 156 C. C. A. 118, a financial statement was given to a mercantile agency in March, 1912, and was acted on by the creditor in September of that year. The party giving the statement then became bankrupt. His discharge in bankruptcy was opposed on the ground that he had obtained credit by a false statement. The court refers to the statement given to the agency as "a general and continuing statement"—"running for an indefinite period." It also refers to the period during which it was intended to be used and says, "Such a period may be long or short according to varying circumstances." We construe this to mean for a time which under the circumstances can be deemed "reasonable."

The order of the District Court is reversed, the report of the special commissioner is confirmed, and the reclamation petition denied.