## JASLOW v. WATERBURY CO.

(Circuit Court of Appeals, Second Circuit. January 7, 1924.)

No. 111.

1. **Courts ⬯356—Refusal to grant new trial held not reviewable.**
   Refusal of District Court to grant a new trial on the grounds set forth in Code Civ. Proc. N. Y. § 999, is not reviewable by the Circuit Court of Appeals.

2. **Appeal and error ⬯1176(6)—Reversal carries right to new trial.**
   A reversal of a judgment necessarily carries with it the right to a new trial, and the Circuit Court of Appeals has no power to dismiss the complaint, the defendant pressing an assignment of error for failure of the trial judge to dismiss the complaint but specifically stating that it does not ask and does not desire a new trial.

3. **Sales ⬯81(2), 82(2)—Performance to be within reasonable time.**
   No specific date for performance being fixed in contract of sale, each party was required to perform his or its obligation within a reasonable time.

4. **Sales ⬯96—Seller not required to wait indefinitely for shipping permit.**
   Where contract of sale of rope during the war contemplated no shipment without a permit from the British government, seller was under no duty to deliver until there was a proper permit and was not required to wait indefinitely but only for a reasonable time, and after a reasonable time had expired could properly cancel the contract when there seemed to be no prospect of obtaining a permit.

5. **Sales ⬯182(1)—What constitutes reasonable time for shipment held for jury.**
   In an action for damages for failure to deliver rope under contract, wherein it was contemplated that no delivery was to be made until permits were obtained for shipment from the British government, what constituted a reasonable time to wait for such permits before rescinding the contract *held* for the jury.

6. **Sales ⬯96—Delay held to warrant rescission by seller as matter of law.**
   A contract for sale of rope during the war, contemplating delivery for shipment only upon the obtaining of a permit from the British government, need not be performed by seller where purchaser failed from No-

---

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vember 14, 1915, until June 29, 1916, to obtain the necessary shipping permit; such delay being unreasonable as a matter of law in respect to a commodity subject to fluctuating prices.

In Error to the District Court of the United States for the Southern District of New York.

Action by Joseph Jaslow against the Waterbury Company. From a judgment in favor of plaintiff, cross-writs of error are brought. Reversed.

Cross-writs of error to the District Court for the Southern District of New York to a judgment in favor of plaintiff against defendant for $4,602.02.

The action was brought by plaintiff as assignee to recover damages for an alleged breach of a contract originally made between one Herman Gotthardt and defendant for the sale by defendant to Gotthardt of 100 tons of "Rex Brand" manila rope. Fifteen tons were delivered, and the claim is for damages because of defendant's refusal to deliver the balance of 85 tons on demand made on behalf of one Abraham Spieler, the then assignee of Gotthardt.

Prior to March 23, 1916, Spieler, or the Spieler Company had an inquiry from Gotthardt of Malmo, Sweden, for Rex Brand rope. Spieler approached defendant with a proposition that it sell him or his company this rope, but defendant refused to sell to Spieler or his company because of the condition of his credit.

In a letter dated March 24, 1916, addressed to Spieler Company, defendant offered the rope "for your customer," and stated the price and terms of payment. Delivery was to be "All F. A. S. New York or Brooklyn docks. * * *" The letter further stated:

"With reference to shipment, would say that if the order is placed we could complete shipment in about 90 days but could start shipping in 10 to 12 days from receipt of order, giving you one car in about 12 days and following in like proportions until the order is completed.

"This offer is for prompt acceptance and based on sample submitted.

"When Mr. Spieler was in office he referred to shipment c. i. f. We, however, cannot quote at this time on the base of c. i. f. as we have no means of guaranteeing freights and insurance. The best we could do would be to make delivery to steamer dock, freight, insurance and other shipping charges to be for the buyer's account. He would do all possible from this end of the line to insure the best conditions, lowest freight rates, proper packing, but the responsibility of shipping must rest with the buyer after we make delivery to steamer dock."

No specific date for delivery was named.

Under date of March 30, 1916, Spieler Company wrote Gotthardt offering the same rope at increased prices and called attention to the necessity of obtaining proper papers in respect of shipment, among which would be the approval of the British authorities in New York. .

In this letter, it was further stated: "When the order is approved, we would notify you that we would execute. Up to that time, we could not accept definitely."

Under date of May 23, 1916, Gotthardt accepted the proposition made by Spieler Company, and this acceptance was turned over by Spieler to defendant on the latter's agreement to protect Spieler "on my profit."

On May 24, 1916, defendant cabled and wrote Gotthardt accepting his order "through Abraham Spieler, your New York agent," and requesting confirmation by cable.

Under date of May 30, 1916, Gotthardt cabled confirmation and also wrote a letter in which he stated, among other things:

"In order to obtain a shipping permit I beg to address yourselves to Messrs. Furness, Withy & Co., 32 Broadway, New York, the agents for the Swedish-American Line in Gothenburg, with whose steamers I mean it is best to ship the goods as they are going direct to Gothenburg from New York."

Proper shipping papers having been obtained, defendant, on or about September 22, 1916, delivered 15 tons of rope to a corporation (hereinafter called Gotthardt Corporation) to which Gotthardt had assigned the contract.

On November 14, 1916, the Gotthardt Corporation cabled defendant "ship remainder first opportunity provided shipping permit obtained insure against capture confirm wireless," and on the same date it wrote a letter to the same effect. On December 15, 1916, defendant sent Gotthardt a cable stating, inter alia, "Cannot insure against capture seizure or detention if you will open bankers confirmed credit in New York payment as delivered f. a. s. vessel New York you assuming all risks will send balance rope against permits issued freight insurance all shipping charges your account otherwise ask cancellation order."

Also under date of December 15, 1916, defendant wrote a letter to Gotthardt repeating somewhat more at length what had been set forth in the cable of December 15, 1916. There was no proof that the cable or the letter had been received.

Under date of January 5, 1917, the Gotthardt Corporation purported to assign its contract to another corporation in Sweden which will be referred to, for brevity as Bachman's Company. Gotthardt, however, sent a cable to Spieler which read:

"Instruct Waterbury Company to obtain shipping permit for balance manila ropes to Aktiebolaget Bachmans Repvaruafar Malmo; we guarantee payment when shipping documents presented here."

And a copy of this cable was sent by Spieler to defendant.

By letter bearing the same date, i. e., January 5, 1917, Bachman's Company wrote defendant that it had taken over from the Gotthardt Corporation the latter's purchase of about 85 tons of manila ropes; that it would like defendant to ship the rope as soon as possible with Swedish steamers to Gothenburg and that it would pay for the goods as soon as shipping documents and insurance certificates were presented through any bank or bankers at Malmo, Sweden, and it added, "But on no account must the goods be shipped without the shipping permit has been obtained."

Defendant then endeavored to get the shipping permit, but the British authorities refused to issue it. It was conceded on the trial "that the defendant did everything that it could reasonably be expected or required to do to obtain a permit."

Under date of February 1, 1917, defendant wrote to Bachman's Company a letter as follows:

"We beg to advise you that your letter dated January 5, 1917, was delivered to us on January 30th, in which letter you advise us that you have taken over from Messrs. Aktiebolaget Herman Gotthardt their contract with us for about 85 tons of manila ropes, and ask that we ship these manila ropes as soon as possible in three or four different lots. We also note your instructions that 'on no account must the goods be shipped without the shipping permit has been obtained.'

"Immediately upon receipt of your letter we sent a special representative to Washington to obtain the shipping permit referred to, which permit the British Embassy refused to issue and we are advised that there is no likelihood that this attitude will be changed or modified.

"In view of the present situation and of the long delays already suffered, for none of which we are in anywise responsible, we have decided that we cannot keep this contract open further, and we therefore notify you of its cancellation. * * * "

On February 2, 1917, defendant cabled to Bachman's Company as follows:

"Unable to obtain permit to ship. Have therefore canceled your contract for eighty-five tons manila rope. Particulars by Spieler and mail. Advise Gotthardt."

There was no proof that this cable was actually received by Bachman's Company. Contemporaneously, defendant sent copies of its letter of February 1st to Spieler and to the Gotthardt Corporation. Spieler received this copy promptly, but there is no proof that the Gotthardt Corporation received its copy. Spieler testified that he learned that defendant because of difficulty in getting letters of insurance from the British Embassy was considering

rescission or cancellation of the contract about the last of December, 1916, or the early part of January, 1917. Spieler left New York on February 16th for Sweden. He was detained on the ship at Halifax and did not arrive in Sweden until about the middle of April. He told the Bachman's Company and the Gotthardt Corporation of the letter of defendant company of February 1, 1917.

Under date of April 16, 1917, Gotthardt and the Bachman's Company assigned the contract to Spieler. Spieler testified that he sent a cablegram to his attorney, Mr. Haviland, to make a demand on defendant for deliveries about a month or a month and a half before June 29, 1917. The cable was dated June 22, 1917, and received about June 29, 1917. Upon the last-named date, Haviland called on defendant and presented a letter signed by himself on behalf of Spieler in which it was stated in part as follows:

"I have just received cable from the other side requesting me on behalf of Mr. Spieler, to whom the contract has been assigned, to demand delivery of the balance due under said contract here in New York City. I hereby make such demand.

"Kindly let me know how soon and in what quantities you can make such delivery, so that I may be prepared for payment, as well as for storage or other accommodations."

At the time of the demand Spieler did not have any money with which to finance the purchase from defendant.

On July 19, 1917, defendant wrote Haviland answering his letter of June 29th and inclosing a copy of the letter, dated February 1, 1917, supra, and stating:

"There has been no change in the situation since our writing this letter which would justify our reconsidering our then decision.

"We beg to advise you that we do not consider that there is any contract now existing."

Two years went by and then Spieler, Gotthardt, the Gotthardt Corporation, and Bachman's Company, under date of July 3, 1919, joined in a so-called assignment to Jaslow, a brother-in-law of Spieler and the plaintiff herein, of any right, title, and interest that any of them had in the contract of sale or any claim for damages by reason of the breach and repudiation of defendant. This assignment provided:

"Said transferee, Joseph Jaslow, is to perform the buyer's part of said contract of sale, if he can be and is properly called upon by the seller to do so; and the Aktiebolaget Herman Gotthardt, A. B. Bachman's Repvaruaffar and Herman Gotthardt absolve themselves from every risk and obligation in the event of the Waterbury Company desiring to fulfill the original contract and the said Joseph Jaslow not being able to fulfill his part as assignee."

Plaintiff without making any tender or demand thereupon began this action.

Davies, Auerbach & Cornell, of New York City (George T. Hogg, of New York City, of counsel), for plaintiff in error.

Marsh & Wever, of New York City (Charles Capron Marsh, of New York City, of counsel), for defendant in error.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. 1. Plaintiff is dissatisfied with the amount of the verdict below and assigns as error the refusal of the District Court to grant a new trial on the grounds set forth in the then section 999 of the New York Code.

[1] Such refusal is not reviewable here. Great Atlantic & Pacific Tea Co. v. Carey, 220 Fed. 454, 136 C. C. A. 282.

Defendant, though pressing its assignment of error for failure by the trial judge to dismiss the complaint or to direct a verdict for defendant, states that it "does not ask for and does not desire a new trial."

[2] Except, however, in some such situation as occurred in United States v. Benedict (C. C. A.) 280 Fed. 76, affirmed 261 U. S. 294, 43 Sup. Ct. 357, 67 L. Ed. 662, a reversal here necessarily carries with it the right to a new trial, and this court has no power to dismiss the complaint. Slocum v. New York Life Insurance Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029.

We restate the foregoing far from novel propositions because we have noted of late in reviews on writs of error a lack of information as to the difference between the practice in the New York courts and the United States courts.

[3, 4] 2. No specific date for performance was fixed in the agreement between the parties. Hence each party was required to perform his or its obligation within a reasonable time.

It is plain that an essential feature of the agreement was that goods were not to be delivered until the necessary shipping permit was obtained. Obviously, this was a matter of vital importance at this time when submarine warfare had long been known. (In re The Lusitania [D. C.] 251 Fed. 715), and when goods without permit were subject to the risk of capture and condemnation.

The letter of March 24, 1916, was a clear indication that the parties were contemplating reasonably prompt deliveries.

The record also discloses that the amount of rope contracted for was large, that it was a special brand, and that prices were fluctuating—a fact not unfamiliar at that time as illustrated in many reported cases, the outgrowth of contracts made during the war.

The duty, therefore, of plaintiff's various assignors was to obtain or cause to be obtained the necessary shipping permits. Defendant concededly acted in good faith in endeavoring on behalf of plaintiff's assignors so to do.

After the 15 tons had been delivered, the Gotthardt Corporation on November 14, 1916, instructed defendant to "ship remainder first opportunity provided shipping permit obtained. * * *" This was another way of saying that defendant must not deliver until and unless such shipping permit was obtained. Obviously, it would have been futile for defendant to deliver free alongside ship, if there was no permit to ship.

On February 1, 1917, the date of the letter of cancellation or rescission, 2½ months had elapsed since the letter of instructions from the Gotthardt Corporation and, so far as this record discloses, not only had no shipping permit been obtained, but there seemed to be no prospect of obtaining one.

Defendant was not under any duty to deliver until there was a proper shipping permit. It was not required to wait indefinitely but only for a reasonable time.

At the date of the trial (December, 1921), Taylor v. Goelet, 208 N. Y. 253, 101 N. E. 867, Ann. Cas. 1914B, 284, was the New York authority for the proposition summarized in the headnote:

"Where an executory contract fixes the time within which it is to be performed and performance within that time is waived by the parties to the agreement, neither party can thereafter rescind the contract on account of

such delay without notice to the other requiring performance within a reasonable time to be specified in the notice or the contract will be abrogated."

Probably in view of this and other cases, the court charged that it was the duty of defendant to fix a time for performance by plaintiff of its duty and that defendant had no right to repudiate the contract on February 1, 1917.

Since the Taylor Case supra, however, the New York Court of Appeals has decided Partola Mfg. Co. v. General Chemical Co., 234 N. Y. 320, 137 N. E. 603, and Trainor Co. v. Amsinck & Co., Inc., 236 N. Y. 392, 140 N. E. 931.

The Taylor Case was decided by a divided court, two judges dissenting and one not sitting.

In the Trainor Case, supra, the court frankly stated:

"But we did go further in Taylor v. Goelet than the particular case required. Speaking generally of all executory contracts we said there could be no rescission for delay unless time was the essence of the contract. If the agreement explicitly or impliedly was for performance within a reasonable time it never is of the essence. It can only be made so by subsequent notice. In any event the statement is too broad. It does not apply to cases requiring the delivery of articles of speculative and fluctuating value. We have held it does not apply to contracts relating to cable transfers of exchange. Nor does it apply to ordinary contracts of sale where there is no waiver—nothing to induce a party to proceed in the belief that he is not to be held strictly to the time stated."

The court continued:

"Where by a contract to sell the seller is bound to deliver the goods to the buyer but no time for delivery is fixed, the seller must tender them within a reasonable time. Personal Property Law (Consol. Laws, c. 41) § 124. Under this statute the contract such as the one in the case before us does provide for delivery at a future time just as effectually as if that future time was fixed by date. The duty of the seller is absolute. He has not been deceived by any action of the buyer or led to believe that strict compliance with the contract is not to be insisted upon. The provision as to the delivery within a reasonable time is a condition. It may be waived, and if waived it may not again be imposed without notice. If not waived, however, the buyer may refuse to proceed with the contract. Pope v. Terre Haute Car & Mfg. Co., 107 N. Y. 61; Eppens, Smith & Wiemann Co. v. Littlejohn, 164 N. Y. 187. It was therefore, in the case at bar a question of fact whether the goods were delivered within a reasonable time. If the jury found they were not the buyer had a right to rescind the contract."

[5] Defendant excepted to that part of the charge which stated that it had no right to rescind the contract on February 1, 1917. This exception was well taken. Whether a reasonable time had elapsed by February 1, 1917, so as to entitle defendant to rescind, was, under the circumstances of this case, a question of fact for the jury. In view, however, of subsequent events, we regard the February 1, 1917, feature of the case as only incidental to the final situation.

When Spieler obtained the assignment of the contract to himself, he knew defendant's position as set forth in the February 1, 1917, letter.

His demand, through Haviland, was a mere gesture because the contract was not to deliver so much rope "here in New York City," but was to deliver F. A. S. if and when a shipping permit was obtained.

When, therefore, defendant refused to comply with Haviland's demand, its refusal was properly placed on the ground that there was no "change in the situation" from that portrayed in the letter of February 1, 1917, as to "the long delays already suffered."

Defendant, under the principle of the Trainor Co. Case, supra, was not required to fix a date for performance by plaintiff. The question then was whether the delay of plaintiff's assignors was reasonable or unreasonable.

[6] On June 29, 1917, the unreasonableness of the delay of plaintiff's assignors no longer presented a question of fact. A delay from November 14th until June 29th in respect of a commodity subject to fluctuating prices during the World War and after this country had declared war and the inability, proven in this case, to obtain the necessary shipping permit and the complete absence of even a possibility of obtaining such permit compel the conclusion, as matter of law, that such delay was unreasonable. Earnshaw v. United States, 146 U. S. 60, 13 Sup. Ct. 14, 36 L. Ed. 887; In re B. & R. Glove Corporation (C. C. A.) 279 Fed. 372; Agnello v. United States, 290 Fed. 671; and Edwards Manufacturing Co. v. Bradford Co., 294 Fed. 176, decided by the Circuit Court of Appeals for the Second Circuit on November 19, 1923.

It follows that, in any event, on June 29, 1917, the rescission was fully justified and the court should have granted defendant's motion for the direction of a verdict in its favor.

This conclusion renders detailed discussion of plaintiff's assignments of error unnecessary.

Should there be another trial, some of the questions presented by plaintiff's assignments of error will, no doubt, disappear. It is sufficient to observe that the court was correct in the rulings attacked by the first and eighth assignments.

Judgment reversed.